VANDERBILT (McKIBBIN v.). See Case No. 8,860.

## Case No. 16,839.

VANDERBILT et al. v. REYNOLDS et al.

The NORTH STAR.

[16 Blatchf. 80; 7 Reporter, 523.] [1]

Circuit Court, S. D. New York. March 14. 1879.[2]

COSTS—ADMIRALTY APPEALS—COLLISION.

1. Cross libels were filed in the district court, in admiralty, for a collision. one being a suit in personam and the other a suit in rem. In the first suit the district court decreed damages and costs against the respondent. In the second suit, that court dismissed the libel, with costs. The respondent in the first suit appealed, and the libellant in the second suit appealed. This court, on the appeals, apportioned the damages sustained by the respective parties. One of the vessels was totally lost by the collision. The aggregate costs of both parties in this court and in the district court were divided by this court equally between the parties.

[Cited in The Osseo. Case No. 10,608; The Pennsylvania. 15 Fed. 817; The Hercules, 20 Fed. 206.]

2. The rule as to interest on damages and costs, stated.

[Appeals from the district court of the United States for the Southern district of New York.

[These were two libels for collision. The first was a libel in rem by William H. Reynolds and others, owners of the Ella Warley, against the steamship North Star, of which William H. Vanderbilt and others, executors of Cornelius Vanderbilt, were claimants. The second was a libel in personam by the said claimants against the said Reynolds and others.]

Robert D. Benedict, for the Ella Warley.
Augustus C. Brown, for the North Star.

BLATCHFORD. Circuit Judge. In the first case, the district court decreed against the respondents, November 10th. 1866, $27,747.82 damages and $276.76 costs. In the second case, the district court dismissed the libel, May 17th, 1864, with $420.96 costs. In the libel in the first case the claim was $100,000. In the libel in the second case, the claim was "at least" $75,000, "with interest." [Cases unreported.] The respondents in the first case appealed from the whole of said decree therein, on the ground that the libel therein ought to have been dismissed. The libellants in the second case appealed from the whole of said decree therein, on the ground that they were entitled to recover their damages. This court made a decree in each case, on said appeal therein, reversing the decree therein, and ordering that the damages sustained by the respective parties by the collision be apportioned. [See Case No. 10,330.] The damages sustained by the libellants in the second suit were not ascertained in the district court. This court or-

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission. 7 Reporter, 523, contains only a partial report.]
[2] [Affirmed in 106 U. S. 22, 1 Sup. Ct. 41.]

dered a reference in the second suit, to ascertain such damages, and reserved the question of costs in each suit. [See Case No. 10,331.] The $27,747.82, above mentioned, was made up thus:

| | | |
|---|--:|--:|
| Repairs to the North Star, the vessel of the libellants in the first suit | $ 5,141 | 43 |
| Interest thereon for 4 years, to March 13th, 1866, the date of the commissioner's report in that suit, in the district court | 1,083 | 90 |
| | $6,225 | 33 |
| Deterioration in the value of the North Star | 6,000 | 00 |
| Demurrage, 17 days, at $900 per day | 15,300 | 00 |
| | $27,525 | 33 |
| The district court, on the exception by the respondents in the first suit to the item of $6,000 for deterioration, reduced it to $5,000, thus deducting | 1,000 | 00 |
| | $26,525 | 33 |
| Interest on $26,525.33 from March 13th, 1866 (the date of the commissioner's report), to November 10th, 1866 (the date of the decree) | 1,222 | 49 |
| | $27,747 | 82 |

The Ella Warley, the vessel of the respondents in the first suit and the libellants in the second suit, was, with her outfit and stores, totally lost by the collision, on the 9th of February, 1863. This court has fixed her value, at the time she was lost, at $40,000, and the value of her outfit and stores lost, at that time, at $7,675.90.

The costs of the several parties, other than as above specified, have been taxed as follows: Costs of the respondents in the first suit, in the district court, $58.40, and in this court, $31.50; costs of the libellants in the second suit, in the district court, $496.44, and in this court, $1,129.83; costs of the libellants in the first suit, in this court, $577.12; costs of the claimants in the second suit, in this court, $123.85.

The counsel for the owners of the North Star asks that the costs of all parties, in both courts, be apportioned, as well as the damages. The counsel for the owners of the Ella Warley asks that they recover their costs of the district court and of this court.

The North Star recovered in the district court, as damages, as follows: Repairs, $5,141.43; deterioration, $5,000; demurrage, $15,300; total, $25,441.43. In this court it has recovered only one-half of that sum, which reduction has been effected by the appeal of the respondents in the first suit. In the district court the Ella Warley recovered nothing. In this court it has recovered the one-half of $47,675.90, which recovery has been effected by the appeal of the libellants in the second suit. Throwing out interest, the North Star recovers $12,720.72, and the Ella Warley recovers $23,837.95, leaving a balance of recovery in favor of the Ella Warley, of $11,117.23.

In Hay v. Le Neve, 2 Shaw, 395, in 1824, both vessels were held in fault, one only suing, and the house of lords awarded to the vessel suing one-half of her damage, and ordered that each party bear his own costs. The court referred to a case before Sir James Marriott, in 1789, where it was found that both ships were to blame, but one the most, and the loss was apportioned, and it was ordered that the costs of both parties be brought together and divided and borne equally by the parties; and remarked, that "it would, perhaps, be more equitable to say they should each pay their own expenses." In the cases of The Monarch, 1 W. Rob. Adm. 21; The Oratava, 5 Month. Law Mag., Notes of Cases, 45; and The De Cock, Id. 303,—all in 1839,—Dr. Lushington, on the authority of Hay v. Le Neve, ordered that each party should pay his own costs, the damages being apportioned. In The Washington, 5 Jur. 1067, in 1841, where both vessels were held to blame, in cross actions, Dr. Lushington is reported as saying: "I decree the damages, costs and expenses of both parties to be thrown together, and to be equally divided, according to the precedent of Hay v. Le Neve, in the house of lords." But this report must be incorrect. In the case of Vaux v. Sheffer, 8 Moore, P. C. 75, in 1852, there being cross suits, Dr. Lushington had held one vessel only in fault. She appealed. The privy council held both vessels in fault, and divided the damages; and said: "There will be no costs." In The James, Swab. 55, in 1856, one party only suing, Dr. Lushington found both vessels in fault, and pronounced for one-half of the damage proceeded for, "but made no order as to costs." The claimants of the vessel sued appealed, and the privy council reversed the decree below, and held that the suit could not be maintained, but allowed no costs of the appeal. In The Dumfries, Swab. 125, in 1856, the owners of a vessel totally lost by a collision sued the Dumfries, which was injured also. Dr. Lushington condemned the Dumfries. She appealed. The privy council held the Dumfries not to be in fault and the other vessel wholly to blame, and reversed the decree, and said: "But, as one vessel was wholly lost, and the other sustained much injury, and as the case is attended with many difficulties, they are of opinion that no costs ought to be allowed, either in this court or the court below." In the Fyenoord, Swab. 374, in 1858, one vessel suing, Dr. Lushington held the vessel sued wholly in fault. She appealed. The privy council held both vessels in fault, and divided the damage, and said: "The appellants to have their costs of appeal." In The Hibernia, 5 Ir. Jur. (N. S.) 366, in 1860, in the Irish court of admiralty, one vessel suing, the court held both vessels in fault, and divided the damage, "each party paying his own costs." In Maddox v. Fisher [The Independence], 1 Lush. 270, and 14 Moore, P. C. 103, in 1861, there being cross suits, Dr. Lushington held one

vessel solely to blame and she appealed. The privy council held both vessels in fault, and ordered the damages to be divided, and said: "The costs below must be disposed of according to the rule of the admiralty in such cases. There will be no costs on either side, of this appeal." In The Saxonia, 1 Lush. 410, in 1862, there being cross suits, between the Eclipse and the Saxonia, Dr. Lushington held both vessels to blame, and ordered the damages in each case to be divided, "each party to pay his own costs." The owners of the Saxonia appealed in both suits, and the owners of the Eclipse "adhered in each action to the appeal." Adherence by a respondent to an appeal by the other party, is an appeal by the respondent from the same decree, or a part of it, by filing a declaration of adhesion, stating from what part of the decree he desires to appeal. Williams & B. Adm. Jur. 315, Append. 190; The privy council held both vessels to blame, and dismissed both appeals, "each party paying his own costs." In The Agra. L. R. 1 P. C. 501, in 1867, there were cross suits. Dr. Lushington held the Agra wholly in fault, and condemned her in damages and costs. She appealed. The privy council held both vessels to blame, and divided the damages equally (one of the vessels having foundered), and said: "Each party will bear his own costs, both here and in the court below." In The Corinna, 35 Law T. R. (N. S.) 781, in 1876, the admiralty court held the Corinna alone to blame. She appealed. The court of appeal found both vessels to blame and ordered the damages to be divided. The appellant applied for costs, contending, that, notwithstanding the rule of the privy council in such a case, he, being a successful appellant, should have costs. The court followed the case of The Agra, and said: "In these cases, the rule of the privy council will be retained. Though the plaintiff has partially succeeded in his appeal, he is not found to be free from blame for the collision. Each party will bear his own costs, both here and in the court below."

The English rule, applied to the present case, would require, therefore, that each party should bear his own costs, both in this court and in the court below. In this country, the rule has not been uniform. In The Rival [Case No. 11,867], in 1846, in the district court for Massachusetts, both vessels were held to blame, and the damages were equally divided, but all the costs were imposed on the vessel which was held to be most in fault. But, in Lenox v. Winisimmet Co. [Id. 8,248], the same court, in 1848, holding both vessels in fault, divided the aggregate damages equally, and decreed that each party pay one-half of the costs. In The Bay State [Id. 1,148], in 1848, in the district court for this district, one vessel suing, both vessels were held in fault, and the libellants were awarded one-half of their damages, and no costs were allowed to either party against the other. In The Catharine v. Dickinson, 17

How. [58 U. S.] 170, in 1854, the supreme court, for the first time, decided, that the proper rule of damages, where both vessels were in fault, was to divide the loss, but nothing was said about costs. In The Nautilus [Case No. 10,058], in 1854, the district court for Maine, finding both vessels in fault, divided the whole damage to both between them by moieties, and ordered that each party pay his own costs. In Lucas v. The Thomas Swann [Id. 8,588], in 1854, the district court for Ohio found both vessels in fault, and divided the loss, and ordered that the costs "be paid equally." In Foster v. The Miranda [Id. 4,977], in 1854, the district court for Illinois held both vessels in fault, and divided the aggregate damage equally between both parties, and ordered that each party pay his own costs, although one recovered $150. In the St. Charles, 19 How. [60 U. S.] 109, in 1856, the district court had held one vessel wholly in fault, and the circuit court had held the other vessel wholly in fault and dismissed the libel. The libellants appealed to the supreme court, and that court found both vessels in fault, and apportioned the loss, and gave to the appellants their costs of appeal in the supreme court. In Chamberlain v. Ward, 21 How. [62 U. S.] 548, in 1858, there being cross-libels, the district court for the Southern district of Ohio had found one vessel wholly in fault. She appealed to the circuit court. That court held that each party must pay one-half of the damages occasioned by the collision, and of the costs in both courts. Both parties appealed to the supreme court, which held that the case was one of mutual fault, and affirmed the decree of the circuit court, without costs in the supreme court to either party. In The Marcia Tribou [Case No. 9,062], in 1858, in the district court for Massachusetts, both vessels were held in fault, and the damages and costs were ordered to be borne by each in equal proportions. In the same court, in O'Neil v. Sears [Id. 10,530], the same ruling was applied. In The Bedford [Id. 1,216], in this court, in 1863, one party alone suing, the district court had decreed for the libellants. The claimants appealed. This court held both vessels in fault, and ordered the libellants' damages to be divided, and allowed no costs to either party in the court below, but allowed the appellants their costs in this court. In The Austin [Id. 663], in 1868, in the district court for this district, one vessel alone suing, and having been injured, and both vessels being found in fault, the damages were apportioned, and costs were given to the libellants. In the Baltic [Id. 824] and The Paterson [Id. 10,795], both cases in 1869, the same court, under the same circumstances, made the same ruling. In Lane v. The Denike [Id. 8,045], in 1868, there being cross suits, the district court for Massachusetts had held one vessel wholly in fault and awarded full damages and costs to the other. On appeal, the circuit court held both vessels in fault

and divided the damages and costs. In The Maria Martin, 12 Wall. [79 U. S.] 31, in 1870, the district court for Wisconsin had dismissed the libel. On an appeal by the libellants to the circuit court, that court had held both vessels in fault and made a decree that each should pay one-half of the damages and its own costs. The libellants appealed to the supreme court and the claimants did not. That court held that the libellants' vessel was in fault, and affirmed the entire decree of the circuit court. In The Favorita [Case No. 4,694], in 1870, in the district court for the Eastern district of New York, the court said: "The case is one of mutual fault, and, although I entertain no doubt as to the propriety, in a proper case, of mitigating the effect of the rule of equal division of loss, in cases of mutual fault, by awarding full costs to either party, I do not consider that the present case calls for any deviation from the practice, which is to refuse costs to both parties, when both are equally in fault." The practice referred to was evidently based on the English rule. In The Empire State [Id. 4,474], in 1870, in the district court for the Northern district of Illinois, both vessels were held in fault and the damages were divided, and each party was ordered to pay his own costs. In The Mary Patten [Id. 9,223], in 1872, in the district court for Massachusetts. the question is considered by Judge Lowell. There were cross-libels, and, of course, injury to both vessels, and both were held in fault. Judge Lowell remarks, that the question, "whether the costs, like the damages, should be added together and divided, or each should bear his own, seems to be one of doubt." He refers to the case of The Rival [supra], and says that "no question was made of the correctness of that decision, nor that the court has full legal discretion over the whole matter of costs, to adapt its decrees to the equities of each case;" that there were no facts to take the case before him out of the ordinary rule, if there were one "applicable to an equality of fault;" and that it was "very difficult to find any rule from the decisions, in no one of which is there any argument or reason given at the bar or by the court." He then refers to the case of Hay v. Le Neve [supra], as one in which the costs were divided, as well as the damages. I do not so understand that case, as to the costs. He then says, that, in the Massachusetts district, it has been the practice to divide the costs. He then refers to the cases of The Nautilus, The Miranda. The Bedford, and The Favorita [supra], as cases in which costs were refused to both parties. He then adds: "There is one aspect of the question which does not appear to have received sufficient attention. If the loss is all suffered by one vessel, and her owner brings his libel, he will recover half his damages; and there is no reason why he should not, in general, recover his full costs. It is the ordinary case of a prevailing party re-

covering less than he asks for; and, if there has been no tender or offer of amends, and no equity peculiar to the individual case. it is according to the sound and reasonable law of all courts, that he should recover costs. It would take a very long and uniform course of practice to establish any other rule in collision cases; and, although some of the decisions above cited were of that character, the point appears to have been overlooked. In examining some late authorities, since the above paragraph was written, I am happy to see that the recent practice in New York conforms to what I have suggested as the true rule, and gives costs to the libellant. if he alone has been injured and recovers half his loss." He cites, to this effect, the cases of The Austin, The Baltic. and The Paterson. [supra]. He adds: "Returning to the case of injury on both sides, and of cross-libels to recover them, and no very substantial difference of fault or other equity, there appears to be authority for dividing the costs and for refusing them to both parties. The former practice, which has always been ours, seems to me quite consistent with the theory which divides the damages; and I shall adhere to it until the direct authority of an appellate court, or a very decided preponderance of general practice, shall be against it." In The Sapphire, 18 Wall. [85 U. S.] 51, in 1873. the Euryale had sued the Sapphire, in the district court for California, for a collision, claiming $15,000 damages. There was no cross-libel, nor did the Sapphire set up, in the answer, that she had been damaged. The Euryale had a decree in the district court for $15,000 damages. The circuit court affirmed it. On appeal by the Sapphire, the supreme court held that both parties were in fault, and that the damages ought to be equally divided between them, and directed that a decree should be entered "in conformity with this opinion." The circuit court thereupon entered a decree in favor of the Euryale for $7,500, and for her costs in the district and circuit courts, less the costs of the appeal by the Sapphire to the supreme court. The Sapphire appealed again to the supreme court, alleging, as errors, that no damage to the Sapphire was taken into consideration, and that costs in the court below were allowed to the Euryale. For the Sapphire it was contended, that, in collision cases, where both parties were in fault, each should pay his own costs. The supreme court held that the only damages which could be divided in that particular case were those sustained by the Euryale. As to the costs, the court say: "The appellants further complain. that it was erroneous to allow the libellant his costs in the district and circuit courts, deducting therefrom the costs allowed them by this court—i. e.. the costs of the reversal of the former decree. We do not perceive, however. in this, any such error as requires our interposition. Costs in admiralty are entirely under the control of the court. They are, sometimes,

from equitable considerations, denied to the party who recovers his demand, and they are sometimes given to a libellant who fails to recover anything, when he was misled to commence the suit by the act of the other party. Doubtless, they generally follow the decree, but circumstances of equity, of hardship, of oppression, or of negligence, induce the court to depart from that rule in a great variety of cases. In the present case, the costs allowed to the libellant were incurred by him in his effort to recover what has been proved to be a just demand, and a denial of them, under the circumstances of the case, would, we think, be inequitable." In The City of Hartford [Case No. 2.750], in 1874, in the district court for this district, one vessel alone was injured and brought suit. Both vessels were held in fault and the damages were apportioned, the libellants recovering one-half of the damages they had sustained. The libellants asked for the costs of the cause. The court said: "In this district the practice has been to allow costs, in a case of this kind, to the party who recovered, even though the amount he recovered was diminished by the application of the doctrine of apportionment because of mutual fault." Considering that practice to be sustained by the decision of the supreme court in The Sapphire [supra], the court gave to the libellants a decree for their costs. In The America, 92 U. S. 432, in 1875, the owners of the Fairfield, sunk and totally lost by a collision with the America, had sued the latter in the district court for this district. That court dismissed the libel. On appeal by the libellants, the circuit court reversed the decree and awarded to the libellants $17,723.75, with the costs of both courts. The claimants appealed to the supreme court, and that court held both vessels in fault, and "that the damages and the costs in both of the courts below should be equally apportioned between the two vessels, as prescribed by the decisions of this court," citing The Catharine, 17 How. [58 U. S.] 170; The St. Charles, 19 How. [60 U. S.] 109; and The Maria Martin, 12 Wall. [79 U. S.] 31. The decision is stated thus: "Decree reversed, with costs in this court, and the cause remanded, with directions to apportion the damages and the costs in both courts below equally between the respective vessels, in conformity with the opinion of the court."

The counsel for the owners of the North Star asks this court to follow the ruling in the case of The America [supra]. There is no allusion in the opinion of the court in The America to the decision in The Sapphire. In each case only one vessel sued, and there was no allegation of damage to the other vessel, and the supreme court, on an appeal by the vessel sued, reversed the decree of the circuit court, and reduced the libellants' damages by one-half, because both vessels were held in fault. Yet, in the earlier case, the court held that it would be inequitable not to give to the libellants their costs of the district and circuit courts, and, in the latter case, it apportioned the costs in both of those courts equally between the two vessels. In none of the cases cited by the supreme court in The America, did it apportion the costs of the courts below equally between the parties. In The Catharine and The St. Charles [supra], nothing was said about the costs below, and, in The Maria Martin, the decree of the circuit court, that each should pay his own costs, was affirmed. In Chamberlain v. Ward [supra], the circuit court divided the damages and the costs of the district and circuit courts, and that decree was affirmed by the supreme court. In Chamberlain v. Ward, in Lane v. The Denike, and in The Mary Patten, there were cross-libels, as in this case, and the costs were divided, as well as the damages. There is no case of cross-libels, which I have been able to find, in this country, where both vessels have been found in fault, and the costs in the courts inferior to the supreme court have not been divided. In the following cases, the costs of the lower courts, as well as the damages, have been divided, where only one party sued and both were held in fault, viz.: Lenox v. Winisimmet Co., Lucas v. The Thomas Swann, The Marcia Tribou, O'Neil v. Sears, and The America [supra]. In the following cases, where only one party sued, and the damages were divided, each party was left to pay his own costs of the lower courts, viz.: The Bay State, The Nautilus, The Miranda, The Bedford, The Maria Martin, The Favorita, and The Empire State [supra]. In the following cases, where only one party sued, and the damages were divided, the libellant recovering had his costs of the lower courts, viz.: The Austin, The Baltic, The Paterson, The Sapphire, and The City of Hartford [supra]. In The Rival, the damages, one vessel suing, were divided, and the costs were imposed on the vessel most in fault.

In view of the cases in this country, I think that the better rule is, that in a case like the present, of cross-libels and mutual fault, the aggregate costs of both parties in this court and in the district court must be divided equally between the parties. Whether The America is to be regarded as overruling The Sapphire, in a case like The Sapphire, is a question not involved in this case.

In regard to the damages sustained by the owners of the North Star, interest is not to be added on the $27,747.82, from the time of the decree of the district court, but the item of $5,141.43 is to be taken, and interest paid on it from the time it was paid for repairs. The $5,000 deterioration is to be taken, and interest is to be allowed on it from the date of the commissioners' report, March 13th, 1866. The demurrage, $15,300, is to be taken, and interest is to be allowed on it from the latter date. The interest on the money paid for repairs, may be at the rate of 7 per cent. per annum, and the other

interest must be at the rate of 6 per cent. per annum. There can be no interest on the costs, either of the district court or of this court. Deems v. Albany & Canal Line [Case No. 3,736]. Let a decree be drawn in conformity with the foregoing decision.

[Both parties appealed to the supreme court, where the decree was affirmed. 106 U. S. 22, 1 Sup. Ct. 41.]