# THE BRISTOL.

## WOOLONGHAN, Master, etc., *v.* THE BRISTOL.

## NARRAGANSETT S. S. Co. *v.* CONNOLLY, Owner, and another.

*(District Court, S. D. New York. January 26, 1887.)*

1. COLLISION—MARITIME LIEN—CARGO.
    For damages by collision, there is no maritime lien upon the cargo, except to the extent of freight due, though the cargo belong to the owner of the vessel in fault.
2. SAME—LIMITATION OF LIABILITY — REV. ST. U. S. § 4283—MUTUAL FAULT—HULL AND CARGO—SAME OWNER—OFFSET, HOW MADE.
    Under the general maritime law and section 4283 of the Revised Statutes, which limit the liability of ship-owners to the value of the vessel and freight, where there is a loss to both vessels and cargoes in a collision by mutual fault, the cargo, though belonging to the owner of one of the vessels, cannot be appropriated to help equalize the loss between the two vessels; and, for the same reason, the owner's claim for damages for the loss of his cargo cannot be offset for a similar purpose. No abandonment of the cargo, or of the claim for damages thereto, is required by law as a condition of limiting the ship-owner's liability. The damage which the maritime law requires to be massed, for the purpose of equal division, is the damage "to the ships," not including damage to cargo that the ship or her owner is not legally bound to pay.

3. SAME—INSURERS—SUBROGATION.

Upon a collision near Newport, between the bark B. R. and the steamer B., by mutual fault, whereby the bark and her cargo, both belonging to C., were sunk, and mostly lost, and the B. and her cargo were also injured, it was found, upon the report on damages, that the damage to the steamer, including the damage to her cargo, which she had paid, amounted to $45,696.74; the damage to the B. R. was $34,807.35, less $1,671.05, the proceeds of the wreck; and the net damage to the cargo of the B. R. was $42,175.07. The cargo, being insured, was paid for by the insurance company, who intervened in the suit for a recovery for the damage to cargo. *Held*, (1) that C., as owner of both ship and cargo, was affected by the fault of his master, and could recover but half the damage to the cargo; (2) that the insurers could recover only what C. could recover; (3) that, under the law limiting ship-owners' liability, C. was not liable for any part of the excess (about $11,000) of the Bristol's loss over the whole value of the bark and freight,—the latter being, in this case, nothing; (4) that no part of the claim for the loss of C.'s cargo could be offset or applied against the amount (about $11,000) of the Bristol's loss in excess of the damage to the bark, excluding cargo; (5) that the value of the wreck, $1,671.05, for which C. was obliged to account as a condition of the limitation of his liability, was applicable as an offset to the liability of the Bristol for half of the damage to the bark's cargo; (6) that the insurers were entitled to this balance, amounting to $19,416.48, to the exclusion of C.

The cross-libels in this case grew out of a collision between the bark Bessie Rogers and the steam-boat Bristol, which occurred near Newport, Rhode Island, during a dense fog, on the night of August 9, 1872. Upon a trial before BLATCHFORD, J., in April, 1873, both vessels were held in fault. 6 Ben. 477. The bark was sunk by the collision, and was a total loss. Her cargo of iron was owned by the respondent Connolly, who was also sole owner of the bark, and was fully insured by the Great Western Insurance Company, to which company the cargo was abandoned by the owner upon payment to him of its full value. Up to the time of the decision of the cause the counsel of the insurance company had not appeared separately, but had acted in concert with the owner of the bark, in seeking to charge the whole loss upon the Bristol; and no suggestion upon the record was made of the interests of the insurers. Upon the decision of the court that both vessels were in fault, the insurers intervened, by petition, for leave to prosecute the suit for the protection of their own interests. Leave was granted, with the direction that they file their allegations, and that the other parties answer the same, or be held in default. The petitioners thereupon filed their allegations, setting forth their interest in the cargo, its abandonment to them, their payment of the loss, the assignment to the insurers by the owner of all claims by way of damages in respect to the cargo, as well as a transfer of the bill of lading, the total loss of the bark, and the claim of the insurance company against the Bristol to be paid the whole value of the cargo, namely, $25,000 in gold, with interest from August 10, 1872. The owners of the Bristol filed their answer to these allegations. Thereupon an interlocutory decree was entered, by which it was referred to Commissioner Betts to ascertain and compute the amount of damage caused by the collision, reserving until the coming in of his report the further trial of the cause upon the issues raised by the answer of the Bristol to the averments of the insurance company as respects the amount of damage recoverable for loss of the cargo, and to whom payment therefor should be made.

Many difficulties attended the completion of the proofs before the commissioner. Part of the cargo was recovered by the insurers. By the report, filed June 22, 1886, it appears that the insurers, on December 17, 1872, paid to the libelant, as owner of the cargo, $24,500 in gold, then at a premium of 112, which, with interest from that time, makes $49,689.26. The value of the cargo was found to be $26,776.60,

| | |
|---|---:|
| which, with interest, makes | $ 49,053 88 |
| Less net salvage on cargo, and interest, | 6,878 81 |
| | |
| Or net damage to the cargo of the bark, | $ 42,175 07 |

The value of the bark at the time of loss was $19,000, or,

| | |
|---|---:|
| with interest, | $ 34,807 35 |
| Less net salvage, and interest, | 1,671 05 |
| | |
| Making the net damage to the bark, with interest, | $ 33,136 30 |

| | |
|---|---:|
| The damage to the Bristol, with interest, was | $ 28,569 22 |
| To her cargo, for which the Bristol has paid, | 17,127 52 |
| | |
| Total loss by Bristol, | $ 45,696 74 |
| The damage to bark and cargo, | 75,311 37 |
| | |
| Total loss of both vessels and cargoes, | $121,008 11 |

| | |
|---|---:|
| Difference in the whole loss on each side, | $ 29,614 62 |
| One-half this difference, | 14,807 31 |

The Bristol, upon her arrest at the time of filing the libel, was released, on giving stipulation for her value in the sum of $173,000.

The insurance company claimed from the Bristol the whole value of the Bessie Rogers' cargo, namely, $42,175.07, or at least a moiety of the cargo damage.

Counsel for the Bristol contended that, as Connolly was owner of the Bessie Rogers and her cargo, the whole damage is to be added in one mass, and that the Bristol, after offsetting her whole loss, is liable only for half the excess, or $14,807.31. The owner of the bark claimed a proportionate share of this sum.

*Henry Thompson*, for the Bristol.

*D. D. Lord*, for the Bark.

*Jos. H. Choate* and *Prescott Hall Butler*, for Western Ins. Co.

BROWN, J. Upon the facts appearing in the commissioner's report, the matters reserved for further hearing present some novel questions. These relate chiefly to the application of the law of limited liability, the extent to which the damages are to be offset, and the mode in which the balance is to be struck, in a case of mutual fault, where there is severe

damage to both vessels, and to their cargoes, and where the owner of one of the vessels is also the owner of her cargo. The latter circumstance is the peculiar feature that distinguishes the present case from any known adjudication.

The petitioners, insurers of the cargo of the Bessie Rogers, having paid the sum of $24,500 as for a total loss, claim that the Bristol must pay to them, as innocent third persons, the whole value of that cargo, amounting now, with interest, to $42,175.07; and that, in ascertaining the balance payable by the Bristol, no part of this loss on the cargo of the Bessie Rogers can be offset against the loss of $45,696.74 incurred by the Bristol. The owners of the two vessels contend that in no event can the insurers recover more than one-half the loss on Connolly's cargo; and they further claim that the true rule requires that the whole losses on each side, without making any distinction between the Bessie Rogers and her cargo, should be offset against each other, so far as they go, and the Bristol held for only one-half of the excess on the side of the Bessie Rogers and her cargo. The latter mode of adjustment would make the insurer's claim about $7,000 less than the recovery of half the loss on cargo. Connolly, as owner of the Bessie Rogers, claims that the balance payable by the Bristol should be apportioned ratably between him and the insurers, as subrogated owners of her cargo, according to the respective values of vessel and cargo, viz., in about the ratio of three to four.

Before considering this question, however, the relations of the insurance company, as a claimant against the Bristol, should be defined.

1. Under the adjudication of the supreme court in the case of *Phœnix Ins. Co.* v. *Erie Transp. Co.*, 117 U. S. 312, 6 Sup. Ct. Rep. 750, 1176, as well as under other decisions there cited, I find it impossible to hold that the insurance company stands in any superior or essentially different relation to the Bristol from that of Connolly, the insured owner of the cargo. It was there determined that, in cases of this kind, the right of the insurer is a right of subrogation only to the claims of the assured; and that this right is affected by all the limitations and restrictions that attach to the claim for damages in his hands.

The case of *Simpson* v. *Thomson*, 3 App. Cas. 279, is cited with apparent approval, where all remedy was denied to the insurer because the assured, owning both vessels, could not have maintained any action against himself. The scope of the decision in the case of the Phœnix Insurance Company, and of other decisions of the supreme court, is such as to limit the insurers, in a case like the present, to what Connolly himself could have recovered.

2. The decision of the supreme court, also, in the case of *The Juniata*, 93 U. S. 337, in effect, determines that Connolly, and therefore the insurers of his cargo, could recover only one-half of the damage to the cargo, where both vessels are in fault. In that case the owner of one of the two vessels was on board his own ship at the time of the collision, and received severe personal injuries. He was held entitled to recover but half his damages. The principle there involved is equally applicable here, even though Connolly's interests as owner of the ship and as owner

of the cargo are treated as quite distinct; for that decision necessarily involved the principle that the owner's pecuniary claims against the other vessel, for personal injuries even, was affected by the faults of his own master and seamen, as his agents in the navigation of his own ship. The same faults must equally affect his claim for injury to his cargo; and, as the insurers are limited to Connolly's rights, they cannot recover, in any event, beyond half the loss on Connolly's cargo, viz., $21,087.53. A somewhat similar application of the same principle was made by this court in the case of *The City of New York*, 25 Fed. Rep. 149.

In contending that Connolly's entire damages to ship and cargo must be consolidated, and then offset against the Bristol's whole loss in hull and cargo, so far as the latter go, and that the Bristol is to be held liable for one-half the excess only, the counsel for the claimants cite, in the absence of any adjudications, the language of Mr. Justice BRADLEY in the case of *The Alabama*, 92 U. S. 696, where he says, in regard to the rule that each must bear half the damages:

"The rule has been thus applied when the ship and her cargo constituted one opposing force, and a single ship the other; the entire damage to ships and cargo being equally divided between the two ships. Where both ship and cargo on one side belong to the same owners, the case is no way different from that of the two ships alone being injured."

Repeated perusal of this passage, with its context, persuades me that no case like the present was in contemplation of the court. No question in respect to the cargo was involved, nor any question as to the application of the statutes limiting the liability of ship-owners; whereas these are the distinguishing features of the present case. Where no question of limited liability arises, the language quoted is, doubtless, an exact statement of the law. In this case Connolly, the owner of the Bessie Rogers, by an amendment of his answer to the libel against him *in personam*, has pleaded the statutes in limitation of liability, and has invoked their benefit in his defense. Though a foreigner, he is entitled to the benefit of them. *The Scotland*, 105 U. S. 24. I do not think the passage above quoted was designed as any expression of opinion on the question here involved.

The importance of the mode of offsetting the damages arises wholly from the limitation of the liability of ship-owners for losses without their personal fault. Aside from this limitation, it would be immaterial what method were applied, because the damages in the end must be equally divided. It is still of no consequence what method is pursued, if each vessel, with her pending freight, is of sufficient value to respond for her one-half of the whole loss. But whenever one of the two vessels is sufficient, and the other is insufficient, the loss, under the law of limited liability, is not borne equally; and the method of offsetting damages may then become material, making in this case a difference of nearly $5,500.

Our statute declares, in terms, that "the liability of the owner of any vessel for any loss, damage, or injury by collision, incurred without the privity or knowledge of such owner, shall in no case exceed the amount

or value' of the interest of such owner of such vessel, and her freight then pending." Rev. St. U. S. § 4283. This is the general maritime law. · Nothing could be more explicit than this language. It makes no distinction between a ship-owner carrying his own cargo and one carrying another's cargo. So far as respects a discharge from liability, the ship-owner in each case is entitled to that relief on the same terms. In neither case is he required to abandon his cargo, or any other property, save the vessel and pending freight only. Abandonment of the vessel includes abandonment of the claim for damages for the injury to the vessel, though it does not include the claim for insurance. *Place* v. *Norwich & N. Y. T. Co.*, 118 U. S. 468, 6 Sup. Ct. Rep. 1150. Under this limitation, therefore, the value of the Bessie Rogers before collision, and her freight, viz., $34,807.25, or, what is the same thing, the value of her wreck after collision, together with the amount of her claim for damages, are the utmost limit to which the Bristol is entitled to have Connolly, as owner of the Bessie Rogers, contribute to the common loss. The owners of the Bristol are entitled to have the whole value of the Bessie Rogers, including the claim for the loss of the ship and her pending freight, specifically applied and offset against their own larger loss. This was the very point of the adjudication in the case of *The North Star*, 106 U. S. 22, 1 Sup. Ct. Rep. 41. This specific application, by way of offset, of the loss arising to the ship Bessie Rogers, extinguishes all claim for that item of damage, amounting, according to the report, to $33,136.30, and leaves $1,671.05, the net salvage from the wreck, still to be accounted for by Connolly in reduction of the Bristol's loss. Beyond this, the owners of the Bristol have no claim against Connolly, because the statute sets that limit to Connolly's liability.

The Bristol, being worth $173,000, was legally bound to pay the losses of her cargo owners in full; so that, as respects her, it was immaterial, in this case, whether the damage was to her hull or to her cargo. The damages to both amounted to $45,696.74, or nearly $11,000 in excess of the whole value of the Bessie Rogers before the collision. To add the whole loss of the Bessie Rogers and of her cargo into one mass, and then to charge the Bristol for only one-half the excess of that sum over the Bristol's loss, would, in effect, be appropriating $11,000 of Connolly's cargo to offset the Bristol's loss of $11,000 in excess of the prior value of the Bessie Rogers. But this further offset of $11,000, in favor of the Bristol, cannot be legally had against Connolly, or his property, because, under the statute, that excess of $11,000 in the Bristol's loss over the damage to the Bessie Rogers, and her strippings and freight, constitutes no legal claim against Connolly. The statute, as I have said, does not require the owner to surrender his cargo, or any other property, but the vessel and her pending freight only. When that has been surrendered, and the damages to the vessel offset, the owner's legal responsibility is at an end. Hence no further appropriation of his cargo, or of his claim for damages to his cargo, can be made, in order to offset any excess of damage to the Bristol, any more than other property of his could be seized and appropriated or offset for a similar purpose. To mass the whole loss

on each side, and give to Connolly, or the petitioners, only half the difference, would be to abrogate the law of limited liability, as applied to this case.

Again, to allow the offset of cargo as claimed, would be, in effect, not only to require Connolly to abandon to the Bristol's use $11,000 of his cargo, but also to enforce a lien in the Bristol's favor upon the Bessie Rogers' cargo *pro tanto, i. e.*, to the extent of $11,000. But no such lien on cargo for the torts of the ship is known to the maritime law, whether the cargo belong to the ship-owner or not. Such a lien finds no support in the text-books of English or Continental authors, and it is opposed to the ordinary practice of the admiralty. By this practice, the cargo, except for the collection of the freight due, cannot be held for the faults of the ship. There being no lien beyond freight due, no proceeding *in rem* lies against the cargo for damages by collision, if the freight be paid, whether the cargo belongs to the owner of the offending vessel or not; and, if arrested, the cargo must be released upon the payment of the freight due.

This rule was clearly stated by Dr. Lushington in the case of *The Victor*, 1 Lush. 72; and it was applied by Sir Robert Phillimore in the subsequent case of *The Roecliff*, L. R. 2 Adm. & Ecc. 363, where the offending vessel was owned by the owner of the cargo, and the case was free from any complicating circumstances. The cargo, having been arrested, was ordered released on the payment of the whole freight, on the ground that "the cargo is not responsible for the damage."

Parsons, in his work on Shipping and Admiralty, (volume 1, p. 531,) says: "There is no lien, in favor of an injured vessel, on the cargo laden on board of the offending ship, although it belongs to the owner of such ship." English text-books state the same. 2 Kay, Shipm. 918; 1 Maude & P. Shipp. 619, note; Mars. Coll. (2d Ed.) 78; Scrutton, Charter-parties, 199.

Article 216 of the French Commercial Code declares, in effect, the same limitation of liability with our own statutes. Commenting upon this article, Boistel says (Precis de Droit, Comm. § 1189:) "If the owner is his own freighter, he must abandon the amount of the freight which he would have paid upon another vessel, according to the prices current; *but he is never obliged to abandon the cargo belonging to himself.*" To the same effect see 1 Laurin's Cresp Cours de Droit Mar. 632; Valroger, Droit Maritime, § 264; Desjardines, Comm. Mar. § 289, p. 93.

As respects freight, the rule just stated was applied in a case of collision by Sprague, J., in *Allen* v. *Mackay*, 1 Spr. 219, 224; and by the supreme court of Massachusetts in a case of adjustment of general average in *Spafford* v. *Dodge*, 14 Mass. 66, 81.

I find nothing in the case of *The North Star*, 106 U. S. 22, and 1 Sup. Ct. Rep. 41, affirming 16 Blatchf. 80, conflicting with the above view, or requiring the value of Connolly's cargo to be offset before striking the balance due from the Bristol. On the contrary, the language, as well as the principles of the decision, tends to the opposite view. In that case, the Ella Warley having been sunk and totally lost, and having obtained a

decree against the North Star for half the difference in their respective losses, the owners made the extreme claim that, upon her surrender as she lay at the bottom of the sea, they became entitled to recover half her full value as against the North Star, although the latter had sustained considerable, though less, damage. The court rejected this contention, and held that the statute limiting the liability of ship-owners did not apply until after the loss "of the two ships" had been added together, and offset; and that the statute then became applicable to the excess of the one against the other, as the case might be. But no question as respects the cargo of the Ella Warley was before the court.

The language of the supreme court shows that the damage that is to be offset before the statute limiting liability is applicable is not the damage to cargo, but the damage "to both vessels" only. The French authorities cited by the court are very clear upon this point; they indicate what the court intended. The passage from Boulay-Paty is in reference "to the damaged parts of each ship," (page 22;) and Valin says, (volume 1, p. 179:) "The damage of which our article treats is to be understood only of the damage which happens *to the two ships, excluding that done to the merchandise.*" Emerigon (chapter 13, § 14) says: "The kind of division provided for by article 10 is an exception, which *is applicable to the ships only, without embracing the merchandise.*" Article 407 of the Code de Commerce, using substantially the same language as article 10 of the ordinance of 1681, declares, in terms, that the damage shall be paid by the ships that have caused and suffered it, *(par les navires qui l'auront fait et souffert.)* Livre 3, tit. 7, art. 10. And Valroger, in his recent work, (1886,) states it to be, without question, the French law, that only the damage *to the ship, i. e.,* not including merchandise, is massed for division. For cargo, each is liable *in solido.* 5 Droit Maritime, 109–135, §§ 2115, 2118, 2122.

By the German and Italian Codes, though there is no division of damages in case of mutual fault, each ship and each owner, to the extent of the value of the ship and freight, is answerable *in solido* for injury to the cargo; and the cargo owner does not contribute to indemnity for the loss. German Code, §§ 736, 737, 452; Italian Code, §§ 662, 491. The Code of the Netherlands is similar. Sections 321, 536.

By the Middle Age codes it would seem that the damage to merchandise, if the collision was not willful, was a common average between the merchants themselves. Oleron, § 13; Wisbey, 67; Mars. Coll. 128.

In the case of *The North Star, supra,* the loss of the Ella Warley, it is said, "discharged her portion of the common burden." The court further say, (page 29:)

"Her delivery to the waves was tantamount to her surrender into court, in case she had survived. It extinguished the personal liability of her owners by the mere operation of the maritime rule itself. As there was no decree against her owners for the payment of money, there was no room for the application in their favor of the statute of limited liability."

The liability, and consequent loss to either vessel, doubtless includes what that vessel has paid, or is legally bound to pay, for loss of cargo.

It makes no difference on board which vessel the cargo happens to be. *Leonard* v. *Whitwill*, 10 Ben. 638, 658; *The Canima*, 17 Fed. Rep. 271, 272. But the loss "to the ship" does not include what the vessel has not paid, and what neither she nor her owner is bound to pay. Had the cargo of the Bessie Rogers belonged to a third person, neither the vessel nor her owner would here have been bound to pay for it; nor could it have been offset against the Bristol's damage, in order to limit the amount that the Bristol should pay. The language used in the case of *The North Star* has no more application to the present case than it would have if the cargo had been owned by a third person. The damage to the Bristol is greater than that "to the ship" Bessie Rogers. Connolly, having surrendered his vessel and her strippings, and having suffered an offset of all his claims for damage on her account, is under no further responsibility for the Bristol's excess of loss. He stands, therefore, as respects the residue of his claim, *i. e.*, for his loss of cargo, as any other cargo owner would stand who was nevertheless affected with fault, and was, for that reason, entitled to recover but half his damages.

This construction of the law of limited liability works no hardship to the Bristol. She has all the benefit of the responsibility of the other vessel, and of her owners, that the law of limited liability is designed to allow her; and in affecting the claim of the cargo owner, as owner of the vessel, with the faults of his master and crew, and thereby reducing the claim for loss of her cargo by one-half, the Bristol is charged with but half the sum she would have been obliged to pay to any innocent shipper of the same cargo, for the same loss.

In what has been said above it has been assumed that Connolly must be held to contribute to the common loss, irrespective of his cargo, all of his claim for damages for the loss of the ship, and any proceeds of the wreck, as a condition of the limitation of his liability.

The commissioner's report shows a net salvage upon the hull amounting, with interest, to $1,671.05, of which Connolly has had the benefit. This sum is, in effect, the value of the strippings of the wreck. As more than this amount is necessary to make up Connolly's one-half of the gross loss, irrespective of the cargo of the Bessie Rogers, the owners of the Bristol would be entitled to a decree for this sum of $1,671.05 in their suit against Connolly *in personam;* and this sum, as between the same parties, would be applied as an offset or part payment of the amount chargeable against the Bristol in the suit *in rem.* And, as the insurance company stands only in Connolly's shoes, the same application and offset must be made upon their intervention in the suit against the Bristol; because the owners of the Bristol are entitled to the benefit of that offset against Connolly. *The City of Norwich*, 118 U. S. 468, 502, 6 Sup. Ct. Rep. 1150; *The Great Western*, 118 U. S. 520, 524, 526, 6 Sup. Ct. Rep. 1172; *The Eleanora*, 17 Blatchf. 105; *Atlantic Mut. Ins. Co.* v. *Alexandre*, 16 Fed. Rep. 279, 282.

As respects freight, the commissioner's report shows nothing; apparently none was earned, as in the case of *The Great Western, supra*. The value of the cargo, it must be assumed from the evidence, was taken ac-

cording to the rules of the admiralty in collision causes, viz.: Its value at the time and place of shipment, as stated in the written admissions on which the value was found, which excludes any further question of freight.

My conclusions, therefore,. are:

1. That the cargo of the Bessie Rogers, though belonging to the owner of that vessel, is not subject to any lien in favor of the Bristol, and not liable to contribute anything to make good any part of the Bristol's loss; that Connolly's claim for damages for the loss of his cargo is not liable to any offset on account of the excess of the loss of the Bristol in her hull and cargo over the loss of the Bessie Rogers, i. e., to the bark herself; but that Connolly must contribute the value of the wreck and freight,—the latter here being nothing.

2. That the insurance company is subrogated to the rights of Connolly as cargo owner, and entitled to recover of the Bristol one-half of the actual loss on the cargo. It is entitled to no more, because the faults of Connolly's master, as his agent, affect his claim as cargo owner.

3. That the owners of the Bristol are entitled to offset, as against her whole loss, the whole claim of Connolly for the loss of the Bessie Rogers herself; and to have further applied and offset, for their benefit, the value of her strippings, viz., $1,671.05; and to nothing more.

4. That Connolly has no claim to any part of the balance herein found due from the Bristol, because this balance arises wholly from the loss of cargo, all of which belongs, by subrogation, to the petitioners.

5. Woolangham, the master, who was made defendant in the process, would have been liable, if served, to have made good to the Bristol the amount she will be obliged to pay above one-half of the aggregate loss. As he was not served, there can be no decree against him.

Upon the commissioner's report, the sum due the petitioners, after the offsets allowed, will be as follows:

| | |
|---|---:|
| Loss on cargo of Bessie Rogers, | $42,175 07 |
| One-half same, (decree *in rem*,) | 21,087 53 |
| Less net salvage on vessel, chargeable against Connolly, | 1,671 05 |
| Balance of amount due petitioners, | $19,416 48 |

—With interest on the principal from the date of commissioner's report.

Decrees may be entered accordingly, and the costs are divided.