## THE JOB T. WILSON.

## THE HOWARD.

### (District Court, D. Maryland. November 23, 1897.)

1. COLLISION—INJURY TO TOW—LIABILITY FOR DAMAGES.

    Damages caused to a tow by the mutual fault of her tug and the other colliding vessel are chargeable, primarily, one-half against each offending vessel; but, if one of the latter cannot respond for its part, the other must pay the whole.

2. SAME.

    In a case of mutual fault, where one of the colliding vessels was rendered practically worthless, so that a decree for half damages was entered against the other, *held*, that where the latter was also compelled to pay the entire claim of an innocent sufferer by the collision, who was entitled to hold both of the colliding vessels, her owners might recoup one-half the latter sum out of the half damages decreed to the other vessel.

3. SAME—LOSS OF EFFECTS BY CREW.

    Members of the crew of a tug who lose personal effects by reason of a collision resulting from the mutual fault of the tug's officers and the other colliding vessel, being engaged in a common employment with their officers, cannot recover against the tug for their loss. Hence their only remedy is against the other colliding vessel for half their damages.

4. SAME—DAMAGES FOR DEATH OF SEAMAN.

    Under a statute authorizing recovery for a wrongful death only in cases where deceased would have had a right of action for his injuries if death had not ensued, there is no right of action against a tug for death of members of the crew caused by a collision resulting in part from the negligence of the tug's officers, and in part from the fault of the other colliding vessel, and hence the only remedy is against the latter vessel for half damages.

These were libels to recover damages resulting from a collision between the steamtug Job T. Wilson and the steamship Howard. The court heretofore, on July 28, 1897, found both the colliding vessels in fault, made a decree for divided damages, and referred the cause to a master to ascertain the amount.

J. Southgate Lemmon, for Warwick Park Transp. Co.

C. Baker Clotworthy, for intervening petitioners and seamen on tug.

Pollard & Bagby, for representatives of persons who lost their lives in collision.

Wm. Pinkney Whyte and Daniel H. Hayne, for the Howard.

MORRIS, District Judge. In the matter of the proper decree to be passed apportioning the damages resulting from a collision. The court, by its interlocutory decree of July 28, 1897, found both the colliding vessels in fault, and decreed that the damages should be divided, and referred the case to a master to ascertain the amounts. The original libel was filed by the Warwick Transportation Company, the owner of the tug Job T. Wilson, against the steamship Howard, in rem. There was afterwards filed an intervening petition by the Virginia Dredging Company for the damages to a scow belonging to it which was being towed by the tug; also petitions by the crew of the tug for loss of their personal effects. There was also filed a libel in personam against the owners of the steamship Howard by the

widow and children of James F. Childress for the pecuniary loss to them by the death of Childress, who was an engineer on the tug, and who was drowned by the overturning of the tug in the collision; and also a similar libel by Samuel J. Chappel, who was the master of the tug, for pecuniary loss by the death of his son, 17 years old, who was cook on the tug and was also drowned. These libels to recover for the death of Childress and young Chappel are in personam against the Merchants' & Miners' Transportation Company, the owner of the steamship Howard; the right of action arising under the Maryland law, the place of collision being in the Patapsco river, within the limits of Maryland.

The Maryland Code of Public General Laws (volume 2, art. 67) provides that wherever the death of a person shall be caused by such a wrongful act, neglect, or default as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, the party who would have been liable if death had not ensued shall be liable to an action for the benefit of the wife, husband, parent, or child of the person whose death was wrongfully caused. Before the interlocutory decree was passed, the owner of the steamship filed a petition on May 28, 1897, in proper form, under the fifty-ninth admiralty rule, making the owner of the tug a party to the cause, and charging that the sole cause of the collision was the faulty navigation of the tug. On motion of the owner of the steamship, an order was passed July 27, 1897, by which the original libel, together with all the petitions filed therein, and the libels of the widow and children of Childress, and the libel of Chappel, and the libel of the owner of the steamship instituted under the fifty-ninth rule, were consolidated. On June 22, 1897, the owner of the tug, filed his petition to limit liability under sections 4283–4285 of the Revised Statutes, and by an order passed July 23, 1897, it was allowed to surrender the tug and her pending freight to the marshal, who was directed to sell the tug and bring the proceeds into court. The tug was sold for a very inconsiderable sum, which yielded nothing after deducting expenses; so that, if the liability of the owner of the tug be limited to the proceeds of the tug, its liability is extinguished. The exceptions to the sums found as damage by the master's report having been overruled, the questions now to be considered have relation to the proper decree to be passed apportioning the damages.

First, as to the claim of the Virginia Dredging Company for damage, demurrage, and expenses on account of injury to its scow which was being towed by the tug. No fault is attributable to the scow, and its owner is an innocent sufferer, entitled to full compensation; and, while each wrongdoer is primarily chargeable with half the damage, if the innocent sufferer is unable to obtain the one-half charged against either he can compel the other to pay the whole. The full amount of this claim is $3,050.

Second, the claim of the Warwick Park Transportation Company for injury to the tug, including all expenses, is $4,200, of which it is entitled to recover one-half, amounting to $2,100. The Howard was not injured, and the tug was injured to the extent that in her dam-

aged condition she proved to be practically worthless, so that the only fund from which any of the parties entitled to recover can be paid is the stipulation given by the owner of the Howard or the responsibility of the owner in personam. The Howard and her owner are, however, only liable for half the damages. Therefore it seems to me that if, by payments to innocent sufferers, the Howard is made to pay in excess of half to make good damages for which the tug is liable, she should be allowed to retain the excess out of the money in the hands of the steamship owner payable to the owner of the tug. One of the benefits of the power of the admiralty court to bring in all the parties charged with fault in a collision case, and to consolidate all the libels into one case, is that by one decree the court can settle the rights of all the parties and do substantial justice. The North Star, 106 U. S. 17, 27, 1 Sup. Ct. 41.

It is urged on behalf of the Warwick Park Transportation Company, the owner of the tug, that it should receive from the stipulators for the steamship its full one-half of its damages without deduction, because, having surrendered the tug, its liability is limited to her proceeds, and that to allow damages to the innocent sufferers to be deducted from its recovery against the steamship is to defeat that limitation; and, further, that the law does not permit the owner of the steamship to recoup any damages it may have to pay, because the law does not permit a claim for contribution by one wrongdoer against another. The answer is, I think, that the admiralty rule of apportioning the damages resulting from a collision, when both vessels are wrongdoers, is a rule peculiar to the admiralty, and is in direct conflict with the common-law rule. For special reasons of maritime policy, instead of refusing, as the common law does, to allow either of the wrongdoers to recover against the other, the admiralty provides a special proceeding to bring into one case all the parties charged with fault for the very purpose of compelling each to bear its share of the whole damage; and the decree in favor of innocent parties who are free from fault is not against the guilty in solido for the whole amount, but against each for its share, with the provision that, if the innocent party is unable to obtain satisfaction from either of those decreed against, he may proceed against the other, because he is entitled to be paid in full. The Alabama, 92 U. S. 695; The Atlas, 93 U. S. 302; The Juniata, Id. 337; The Virginia Ehrman, 97 U. S. 309; The Sterling, 106 U. S. 647, 1 Sup. Ct. 89. In The Juniata only one of the offending vessels was sued. There was a decree against that vessel for one-half the damages of Pursglove, the owner of the other vessel, and for the whole damage suffered by the United States, the innocent owner of cargo, and the court said (93 U. S. 340):

"The decree must therefore be changed so as to require full payment to be made to the United States by the claimants of the Juniata. Whatever their rights may be against Pursglove by reason of such payment of more than one-half must be settled in another proceeding. It cannot be done in this litigation."

Subsequently, and after the case of The North Star, 106 U. S. 17, 1 Sup. Ct. 41, the supreme court promulgated rule 59 in admiralty (112 U. S. 743), giving the right to the owners of the vessel proceeded

against to bring any other vessel contributing to the collision into the same suit, so that the court might render such decree "as to law and justice shall appertain." In The North Star the supreme court refused to allow the statute of limited liability to be applied so as to work the injustice of permitting the owners of one vessel to receive their full moiety of the loss, and then defeat the owners of the other vessel by interposing the limitation of liability. It seems to me a similar injustice would be worked by permitting the owners of a vessel which is primarily liable for only one-half of the damage of an innocent sufferer to be compelled to pay the other half charged against the other vessel, and yet refusing to allow the owners of the vessel which has paid the whole to obtain the excess out of the money in their hands payable to the owners of the other vessel for damages arising from the same collision. The whole object, as it seems to me, of the practice in admiralty, which enables the court to deal with all the questions arising from a collision as one transaction, is to prevent such inequitable results. The City of New York, 25 Fed. 149; The Canima, 17 Fed. 271; The Hercules, 20 Fed. 205.

There was also on board the tug a passenger, John G. Trent, who lost his personal effects to the value of $70, and who, as an innocent sufferer, is entitled to full compensation. He is to be paid by the stipulators of the Howard, with the right to recoup one-half from the sum awarded to the tug.

The report also finds the amounts of the losses of the personal effects of the master and the crew of the tug. These claimants, being all of them members of the crew of the tug and engaged in her navigation, were, in my judgment, in a common employment, and could not recover against the tug. As to the master and mate, it was their own personal neglect and want of care which contributed to bring about the collision, and as to the others, so far as the navigation of the tug was concerned, I hold that they were engaged in a common employment. As to the mate, who had charge of the wheel and failed to avoid the Howard, and as to the master, who negligently performed the duties of a lookout, the case seems clear; and as to the others of the crew it does not seem to me that the owner owed to them the duty of seeing that the master and mate made no mistakes of navigation. After the owner had provided a proper tug and competent officers and crew, they all took the risk, as it appears to me, of the negligence of any of the ship's company in the ordinary work of the tug, and cannot recover against the tug for damages suffered by reason of a disaster to which no fault of the owner has in any way contributed. The Queen, 40 Fed. 694; The Bristol, 29 Fed. 867. These claimants are therefore entitled to a decree against the stipulators for the Howard for one-half of the respective losses.

With regard to the amounts awarded to the widow and children of the engineer, and to the master, who was the father of the young man 17 years of age who was drowned, it seems to me that they are only entitled to recover one-half of the amounts awarded. Under the Maryland statute they can only recover if the deceased would have had a right of action for his injuries if death had not ensued. If I am right in holding that none of the tug's officers and crew could

have sued the owner of the tug, because the owner of the tug had not violated any duty which as owner it owed to them, then the statute gives no right of action against the tug.   It seems impossible to suppose that, if the engineer had negligently caused the boiler to explode, the master or mate could have had a right of action against the owner; and it seems equally unreasonable that the engineer could have a right of action against the owner because the mate made a mistake as to how near he was to the edge of the channel, and the master was negligent in performing the self-assumed duty of a lookout.   They were all engaged in the common employment of navigating the tug.   Elevator Co. v. Neal, 65 Md. 438, 5 Atl. 338; Railway Co. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983.   It follows that, having no right of action against the tug, these suitors must lose the half of the damages for which the tug would be responsible, and can only recover from the Howard the remaining half.   I am aware that in Transfer No. 4, 9 C. C. A. 521, 61 Fed. 364, this rule was not approved, but it seems to me the weight of authority and of reason sustains it.

Taking the master's report of the amounts of the damages, the decree should be as follows:

Against the stipulators for the steamship Howard in favor of the Virginia Dredging Company for one-half of the full amount of $3,050, viz. $1,525; with the right, also, to said dredging company to be paid any part of the remaining $1,525 which shall not be paid by the owners of the tug.

| | | |
|---|---|---|
| Samuel J. Chappel (master), ½ personal effects, ½ of $62 | $ | 31 00 |
| Samuel J. Chappel (master), ½ personal effects of son, ½ of $55 | | 27 50 |
| John G. Trent (passenger), his personal effects, his whole loss, viz... | | 70 00 |
| —with the right when paid to deduct ½ from the owners of tug. | | |
| Zero Walker (mate), ½ personal effects, ½ of $100 | | 50 00 |
| Lawrence W. Smith (fireman), ½ personal effects, ½ of $57.70 | | 28 85 |
| Charles Kersey (fireman), ½ personal effects, ½ of $52 | | 26 00 |
| Sarah E. Childress and children, for loss of life of James F. Childress, ½ of $3,000 | | 1,500 00 |
| Samuel J. Chappel (master), for loss of life of his son Charles, ½ of $700 | | 350 00 |
| The Warwick Park Transportation Company, ½ of $4,200.. $2,100 00 | | |
| Less ½ of $3,050, the whole damage paid to the Virginia Dredging Company, if paid by the stipulators for the Howard $1,525 00 | | |
| Less ½ of $70, the whole damage paid to John G. Trent, a passenger on the tug 35 00 | | |
| | 1,560 00 | |
| | | 540 00 |

I understood at the argument that there were some items of expenditure after the collision made by the owners of the tug included in the award of $4,200, which it was conceded should be paid in full. As these items are not separated in the master's report, I have not been able to deal with them, but counsel can bring them to my attention.   Upon the question of interest and the costs I will also hear counsel.   It may be more convenient that the stipulators for the Howard be required to pay the sums decreed against them into the registry of the court for distribution.