## The Queen.

## In re Everett et al.

(District Court, S. D. New York. December 11, 1889.)

1. **Collision—Injuries to Passengers and Seamen—Libel—Parties.**
   Seamen and passengers sustaining injuries by collision may be made co-libelants with the owners of the vessel, even after an interlocutory decree, no sufficient reason to the contrary appearing.

2. **Same—Fellow-Servants.**
   Seamen and officers are fellow-servants, as respects the details of navigation on board ship. Each takes the risk of the other's negligence, and has no claim for damage against his own ship or her owners for collisions occasioned thereby. On collision by the faults of both vessels, when both are before the court, the damages must be apportioned between them; and the seamen on board one vessel can recover only half their damages against the other, because they are disabled by their relation to their own ship and her owners from any recovery against the latter, directly or indirectly.

3. **Same—Measure of Damage to Passenger.**
   Passengers recover full damages, the one-half of which is deducted from the amount payable to the other vessel for her own loss.

4. **Same—Measure of Damage to Seamen.**
   On claims of seamen for personal injuries for being thrown into the water by collision, only the actual damage from physical injury, or consequent loss of employment, should be allowed.

In Admiralty.

*Geo. A. Black*, for petitioners.

*R. D. Benedict*, for respondent.

Brown, J. The petitioners, of whom five were seamen, and two others government inspectors on the dredge Queen, applied to the court after an interlocutory decree holding the City of Alexandria and the Queen both in fault for the collision between them, (31 Fed. Rep. 427,) to be made co-libelants, in order to recover for their loss of personal effects and for personal injuries. No sufficient reason to the contrary appearing, the application was granted.

1. *Personal Effects.* Two of the petitioners have given no evidence as to their claims. The others I find lost personal effects of the values following, there being little strict proof, beyond estimates, of actual present value:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Edgar Everett, | - | - | - | - | - | - | - | $ 70 00 |
| Webster Brown, | - | - | - | - | - | - | | 60 00 |
| Clifford Kelsey, | - | - | - | - | - | - | - | 100 00 |
| Norman Chisam, | - | - | - | - | - | - | | 15 00 |
| A. P. Sherrick, | - | - | - | - | - | - | - | 110 00 |
| James Dorrell, | - | - | - | - | - | - | - | 45 00 |
| James Godwin, | - | - | - | - | - | - | - | 80 00 |
| Daniel N. Cozzens, | - | - | - | - | - | - | - | 150 00 |

2. *Personal Injuries.* Without proof of some substantial harm, some incapacity for their ordinary work, or some expense incurred, no damages for alleged personal injuries should be awarded to seamen. Without this, the allowance of damages for being thrown into the water, and for alleged fright, would in this class of cases, I think, be specially impolitic

and dangerous. Cozzens, one of the government inspectors, was not on board at the collision. The evidence does not show that Chisam or Godwin received any material injuries. The following sums are believed to be a fair compensation for the actual loss or damage to the other seamen, respectively, having reference to the actual damage caused them, or incapacity for work, which as to most of them was, as the evidence shows, very slight:

| | |
|---|---|
| To Dorrell, | $100 00 |
| Brown, | 50 00 |
| Sherrick, | 30 00 |
| Everett, | 20 00 |
| To Kelsey, the other government inspector, who had no duties on board as a seamen, and was not in the employ of the owners of the dredge, | 250 00 |

3. The two government inspectors are entitled to judgment for the full sums above awarded them. A recovery of the full amount is also claimed for the other petitioners, who were seamen, as against the City of Alexandria, although the Queen, on which the petitioners were employed, was also held in fault. Such, doubtless, would be the rule in a common-law action against the City of Alexandria alone, because the common law does not recognize any right of contribution as between wrong-doers. *The Bernina*, L. R. 12 Prob. Div. 58, 83, 93, L. R. 13 App. Cas. 1, was adjudged as a common-law action, and on that ground. But the rule in this country is otherwise in admiralty causes when both vessels are before the court. The damage must then be apportioned between the two vessels in fault, *The Alabama*, 92 U. S. 695; *The Hudson*, 15 Fed. Rep. 164. Here both vessels are before the court; the Queen, in the person of the libelant company, which, as the owner, is recovering a large sum for half of her damages. If full damages were recoverable by the seamen, as co-libelants, against the City of Alexandria, the latter vessel, upon the authority of many cases, would be entitled to offset one-half that sum against the amount recoverable by the libelant company, as owner of the Queen. The sum payable to the petitioners would be treated just as sums paid by the City of Alexandria for cargo belonging to third persons on board either vessel would be treated. Half that damage would be charged against the Queen, and that would by so much diminish the amount recoverable by the owners of the Queen against the City of Alexandria. *The Eleanora*, 17 Blatchf. 88, 105; *Leonard* v. *Whitwill*, 10 Ben. 658; *The Farnley*, 8 Fed. Rep. 629; *The Bristol*, 29 Fed. Rep. 875. If, therefore, the relation of the seamen on the Queen to her owners is such that they have no legal claim for damages against her owners, those owners cannot be required to account for half that claim to the City of Alexandria; nor is the latter vessel on that account to be charged with either more or less than she would otherwise be charged with, viz., one-half the petitioner's damages; and the petitioners must lose what they are legally disabled from claiming against the Queen or her owners. *Bank* v. *Navigation Co.*, L. R. 10 Q. B. Div. 521, 538, 546. Such is the rule that was applied by this court in the case of *The City of*

*New York*, 25 Fed. Rep. 149, where the point was considered at some length. The same rule was followed also in the case of *The Columbia* and *The Alaska*, 27 Fed. Rep. 704. That judgment was affirmed in the circuit court, (33 Fed. Rep. 107,) and afterwards in the supreme court, (130 U. S. 201, 9 Sup. Ct. Rep. 461.) It has also been applied in other cases, as in *Leonard* v. *Whitwill*, 19 Fed. Rep. 547, where the amount of personal effects was considerable; and in *The Saratoga*, 37 Fed. Rep. 119, which was also affirmed in the circuit court. The remarks made by me in the limited liability case of *Briggs* v. *Day*, 21 Fed. Rep. 730, are not followed here.

It does not appear by whose individual fault the Queen became chargeable. The negligence for which she was held was in having too long a hawser in a dense fog, in a fair-way, and in not giving any whistle or other signal to indicate her presence in a very dangerous place. These faults arose in the details of navigation,—a work for which all the ship's company were alike employed, in their several grades. As to such details the seamen, as fellow-servants, took the risk of each other's negligence. The case of *Railroad* v. *Ross*, 112 U. S. 377, 5 Sup. Ct. Rep. 184, was not intended, I think, to apply to cases like this. The railroad company was there held liable to the engineer because the conductor in determining the running of the train, and time of starting with reference to other trains on the same road, (in directing which the negligence arose,) was held to be acting as the representative of the owner, and not merely as a fellow-servant. But in the case of *Quinn* v. *Lighterage Co.*, 23 Fed. Rep. 363, the latest maritime case in which the question of negligence in fellow-servants has been discussed in the circuit court of this district, the owners were held not liable, although the negligence by which the libelant was injured was the immediate act of the master of the ship, viz., his premature order in setting the winch in motion; because that act was not one that he had done in his character as the representative of the defendant, but was an act that any other co-servant in the same employment might have performed. "The true inquiry," says WALLACE, J., "is whether the character of the act of the captain was one which it was incumbent upon the defendant [the owners] to see properly performed." The same view is reaffirmed in *Railroad Co.* v. *Herbert*, 116 U. S. 642, 647, 6 Sup. Ct. Rep. 590.

Applying those cases to the present, the owners of the Queen are not answerable for the seamen's losses. It would be absurd to say that the owners owed a duty to the seamen that too long a hawser should never be used, or that signals in a fog should be properly given by their own vessel. These details belong to the ordinary work of navigation, and to the men employed to conduct it. As to this work, the owners owe no duty to the officers or seamen to see it properly performed. The duty lies the other way, viz., from the ship's company to the owners. None of such acts, moreover, belong to the master to do as the *alter ego* or special representative of the owner, as in the *Ross Case*. They may be all performed, and for the most part usually are directed and performed, by others than the master. Though there are many acts in the care and

management of the ship, and of the voyage, in which the master acts as the representative of the owners, and performs the duties and functions of the owners, such as the maintenance of the ship and her apparel in a safe and seaworthy condition, procuring repairs and supplies, freighting the ship, arranging her voyages, her times and places of sailing and stopping, and the discharge of all the general duties and legal obligations of the ship to the seamen, for which acts, if negligently performed, the owners are responsible to the seamen injured, they are not responsible for negligence in the mere details of the ordinary work of navigation on board the ship; because these acts are not at all duties of the master as the *alter ego* or representative of the owner, nor are they acts as to which the owner owes any duty to the seamen. As to third persons, all the ship's company represent the owner in the work assigned them, and their negligence makes the owner liable. As between themselves, no one more than another, in the ordinary work of navigation, represents the owner, or performs an owner's duty, and therefore each takes the risk of the other's negligence. In the case of *The Bernina*, both in the court of appeal and in the house of lords, it is said that no recovery could be had by the seaman against his own vessel. Per Lord BRAMWELL, L. R. 13 App. Cas. 14; and per Lord ESHER, L. R. 12 Prob. Div. 83. Such, as above stated, has been the practice of this court in numerous instances, and should be followed until some different rule is prescribed in the appellate courts. The judgment will therefore provide that the city of Alexandria pay to the petitioners, the master and seamen, the one-half only of the sums respectively assessed and allowed to them as their damages; and to the two inspectors the whole amount, respectively, allowed to them; the one-half of the latter amounts to be offset and deducted from the amount recoverable by the owners of the Queen for the loss of the dredge.