[No. 3270.    Decided July 29, 1899.]

THOMAS H. KEATING *et ux., Respondents,* v. PACIFIC
STEAM WHALING COMPANY, *Appellant.*

APPEAL—HARMLESS ERROR—IMPROPER ADMISSION OF EVIDENCE.

The improper admission of opinion evidence, in an action by a
seaman for injuries received on a vessel engaged in towing a
barge, that the appliances used for towing were unsafe, is not
ground for reversal, when it is manifest from the evidence as to
the character of the appliances that they were not reasonably safe
and that the jury were justified in so finding, whether the ques-
tionable evidence was admitted or not.

SHIPPING—INJURIES TO SEAMAN—ASSUMPTION OF RISKS.

Where a seaman, after signing shipping articles for a voyage
on a vessel engaged in towing, discovers on going aboard the
vessel that the towline is to be attached to the mainmast, and,
deeming such appliance unsafe, informs the mate, who is in
charge of the vessel, that he will not go if the mainmast is to be
used, and is assured by the mate that it will not be, such seaman
can not be held to have assumed the risks of the employment, so
far as the using of the mainmast is concerned.

SAME—CONTRIBUTORY NEGLIGENCE.

Obedience on board ship at sea to the orders of the mate or the
captain is not negligence, even though the seaman knows the
danger.

MASTER AND SERVANT—FELLOW SERVANTS—CAPTAIN AND SEAMAN OF
VESSEL.

The relation of fellow servant does not exist between the cap-
tain or mate and an ordinary seaman, and the negligence of those
officers in the details of the work of navigation on board the ship
is the negligence of the owner, for whom they stand as vice prin-
cipals.

Appeal from Superior Court, King County. — Hon.
ORANGE JACOBS, Judge.    Affirmed.

*Gorham & Gorham* and *John K. Brown,* for appellant:

The liability of the defendant in this action is based,
according to the complaint, upon its negligence in not hav-

ing proper appliances for towing on its steamer, in having unsafe appliances, and in towing in an unsafe way. The law imposes upon the jury alone the duty of judging the facts of any case and it was proper to put in evidence all the facts and circumstances surrounding and bearing upon the injury of plaintiff, but no person should have been permitted, as a witness, to express to the jury his opinion of the safety or want of safety in the appliances and manner of towing. It was not a question for expert testimony. *Colorado Coal & Iron Company v. Lamb,* 40 Pac. 251; *Kauffman v. Maier,* 29 Pac. 481 (18 L. R. A. 124); *Crane Co. v. Columbus Construction Co.,* 73 Fed. 984; *Redfield v. Oakland Consolidated Street Ry. Co.,* 43 Pac. 1117; *Junction City v. Blades,* 41 Pac. 677.

If there was any risk, either ordinary or unusual, to which anything in the rigging or equipment of the vessel subjected respondent, he assumed that risk and accepted the peril incident to it. The mainmast and main boom of a steam vessel like the Golden Gate are not to be overlooked or hidden, and, to a man who had been a seaman for ten years and was familiar with the rigging of towing vessels, a glance at this vessel must have made the nature of its rigging and equipment apparent, and that is what respondent claims to have been unsafe and the cause of his accident. This court has repeatedly held that, where the dangers of an employment are apparent, the employee takes the risk of all apparent danger. *Olson v. McMurray Cedar Lumber Co.,* 9 Wash. 500; *Bullivant v. Spokane,* 14 Wash. 577; *Jennings v. Motor Co.,* 7 Wash. 275; *Week v. Fremont Mill Co.,* 3 Wash. 629. See, also, *O'Malley v. Gas Light Co.,* 158 Mass. 135; *Knisley v. Pratt,* 42 N. E. 986 (32 L. R. A. 367); *Morbach v. Home Mining Co.,* 53 Kan. 731; Beach, Contributory Negligence, § 12.

*Frank B. Wiestling,* for respondents:

Appellant's point that the opinions of witnesses, regarding the safety of the appliances and the manner of towing, were improperly admitted is without merit. These witnesses were peculiarly qualified to testify as to ships' rigging, and the manner of towing, and places of work on board ship, and those facts are not within the knowledge of ordinary men of affairs. It is technical knowledge. McKelvie, Evidence, pp. 186-188; *Sears v. Seattle Consolidated St. Ry. Co.,* 6 Wash. 227; *People v. Hopt,* 7 Pac. 408.

The captain or mate and an ordinary seaman are not fellow servants. *Peterson v. The Chandos,* 4 Fed. 649; *The Neptuno,* 30 Fed. 925; *Thompson v. Hermann,* 32 Am. Rep. 784; *Searff v. Metcalf,* 13 N. E. 796 (1 Am. St. Rep. 807) ; and the master is liable for the negligence of those in charge of the vessel in the management of the details of navigation. *Hammarberg v. St. Paul & T. Lumber Co.,* 19 Wash. 537; *Bateman v. Peninsular Ry. Co.,* 20 Wash. 133; Shearman & R., Negligence (3d ed.), § 105, note.

The opinion of the court was delivered by

REAVIS, J.—Action for damages for personal injuries. Plaintiff Thomas H. Keating was a sailor on the steamer "Golden Gate," owned and operated by defendant, and engaged at the time of the injury sustained by plaintiff in towing a barge from Seattle to Skagway, Alaska. The tow line was fastened to the main mast of the Golden Gate, passing back over the stern to the barge. A mainsail was carried on the main mast and a main boom was used therewith, and a stick of timber was placed across the vessel, between the main mast and the stern, to keep the tow line from catching in chocks on each side of the stern of the tow boat. Plaintiff was injured while furling the mainsail to the main boom, by order of the mate. He was

struck by the tow line when it swung across the ship by
reason of the motion of the vessel in a heavy sea.    The
charge of negligence is that defendant neglected to have a
towing post or bitt on board, but, instead, towed from the
main mast and used the main mast for a towing post or
bitt, and at the same time used the mainsail and a main
boom with a guard timber across ship between the main
mast and stern, and the tow line passed immediately below
the main boom, and only a short distance above piles of
coal on deck; that towing from the main mast while using
the main sail with a main boom and guard timber across
ship, instead of towing from a tow post or bitt further aft,
was negligence, and was an unsafe way to tow; and that
the place where the plaintiff was compelled to work as a
sailor in furling the mainsail about or to the main boom
was an unsafe place to work.    There was a verdict, and
judgment entered thereon, for plaintiff.

1.    The first two assignments of error may be consid-
ered together.    Two witnesses were permitted to testify,
over the objection of defendant, that in their opinion tow-
ing from a main mast, at the same time using a mainsail
with the main boom, with a guard timber across the ship,
and in the manner shown, was unsafe.    It is maintained
by counsel for defendant that it was not a question for
expert testimony; that the facts are simple and easily
understood by men without technical knowledge or experi-
ence in the business of towing.    There is much reason in
this contention, and, while the examination of the record
discloses that when the question was first propounded, call-
ing for an opinion, the objection seemed to call the court's
attention to the qualification of the witnesses to express an
opinion, rather than the incompetency of expert testimony,
yet the objection was fairly preserved.    Counsel for de-
fendant afterwards introduced opinion testimony of the
same nature, and several of defendant's witnesses—experi-

enced seamen——were asked for their opinion with reference to the safety of the appliances used in towing. There is no controversy upon the facts causing the injury, and no dispute as to what the appliances used in towing were. The tow line was fastened below the main boom, and some feet above the deck, extending back over the stern, with the stick of timber across the ship, as before mentioned. All the testimony disclosed that the main mast was not the place where the tow line was usually fastened in vessels rigged for towing. Tow bitts or posts are ordinarily used. It was the use of the mainsail on the boom, under the circumstances disclosed in the testimony, that was the immediate cause of the accident. The question presented upon these assignments is whether the cause should be reversed and a new trial had on the ground of the improper admission of opinion testimony. The facts were all detailed by the witnesses, and, while it is not necessary and will not be here determined that the undisputed facts showed that the appliances used for towing were unsafe, yet these facts were of such controlling force that it is difficult to see how the jury could have arrived at any other conclusion than that the plaintiff was not provided with reasonably safe appliances when directed to furl the mainsail, and the effect of the opinions of the two witnesses upon the safety of the appliances must necessarily have been slight with the jury. A learned judge has stated the principle thus:

" I think, the correct rule, in regard to the granting or refusing of a new trial for the admission of irrelevant or improper evidence, is this: Where the exceptionable evidence is of little weight compared with the rest of the proof, and the latter fairly justifies the finding of the jury, a new trial will not be granted; but it must in all cases appear very satisfactorily that the verdict must and ought to have been the same whether the questionable evidence was admitted or not." *Smith v. Russ,* 22 Wis. 439.

See, also, *Winkley v. Foye,* 33 N. H. 171 (66 Am. Dec. 715, note).

It is evident that the result would have been the same, if the opinions as to the safety of the appliances had not been given.

2.    The third assignment of error by defendant is that testimony was admitted, over defendant's objection, of a conversation held between plaintiff and the mate before the steamer left Seattle, and after plaintiff had signed shipping articles for the voyage; the substance of the conversation being that the mate told plaintiff that the mainsail would not be used on the voyage, and that plaintiff informed the mate he would not go if the mainsail was to be used.    It is argued that the duties and obligations of the parties to the contract were fixed and determined by the writing—the shipping articles—and that such contract was the best evidence of the terms and conditions of the agreement under which plaintiff shipped.    The objection seems to have been upon the ground that this conversation was not the best evidence of the contract, and it is also argued that the mate could not vary the contract.    The plaintiff was an experienced seaman.    He signed the shipping articles before examining the steamer, and while it was at the wharf in Seattle.    So soon as he went over the ship, he discovered the appliances for towing, and, deeming them unsafe, went to the mate, and the conversation mentioned occurred.    The plaintiff could rightfully have refused to go on the voyage after signing the articles, if the mainsail was to be used; that is, it is not desertion to leave the ship when it is discovered to be unseaworthy and not safely rigged.    *Savary v. Clements,* 8 Gray, 155; 2 Parsons, Shipping & Admiralty (1869), pp. 98, 99; *United States v. Ashton,* 2 Sumner, 13; Desty, Shipping & Admiralty (1879), § 152.

Under the circumstances, and with the mate in charge of the ship, he at the time represented the owner.    *Atchison, etc., R. R. Co. v. Sadler,* 38 Kan. 128 (16 Pac. 46,

5 Am. St. Rep. 729). But it does not seem that the question of the mate's lack of authority was raised in the trial below. It could not, therefore, be considered here. *Nashua Iron & Steel Co. v. Brush,* 91 Fed. 213; *Moran Bros. v. Northern Pacific R. R. Co.,* 19 Wash. 266 (53 Pac. 49).

3. It is maintained by counsel for defendant that, if the appliances were dangerous, the plaintiff assumed the risks which were apparent to him, when he furled the sail. The captain directed and the mate ordered him to furl the sail. The testimony discloses the fact, without controversy, that it was dangerous for the plaintiff to obey this order. The plaintiff alleges that he "was ordered to take in and furl the sail and that, under protest, but obeying the mate in charge, and under compulsion, he took his position on the piles of coal, the same being the only place to accomplish the work of furling." It is also maintained that the danger could have been eliminated by stopping the headway of the steamer, or by luffing so as to bring the tow line over the quarter, out of the way of one furling the sail as plaintiff was doing when injured; that if the accident was caused, not by the manner in which the steamer was rigged and equipped, but by the officers ordering the plaintiff to furl the mainsail in a way which was dangerous, the negligence, if any, was not that of the owner of the vessel, but of the mate, in the details of the navigation and working of the vessel, and for that the owner is not liable. It is maintained that the owner was not responsible for negligence in the mere details of the work of navigaton on board the ship; that the captain and mate and the sailor are fellow servants, and authority is cited to maintain this proposition. *The Queen,* 40 Fed. 694; *Quinn v. New Jersey Lighterage Co.,* 23 Fed. 363; *Benson v. Goodwin,* 147 Mass. 237 (17 N. E. 517); *The Job T. Wilson,* 84 Fed. 204; *The Egyptian Monarch,* 36 Fed. 773.

Obedience on board ship at sea to the orders of the mate or the captain is not negligence, even though the seaman

knows the danger. His is a duty of imperative obligation. 7 Am. & Eng. Enc. Law (2d ed.), p. 396; *Scarff v. Metcalf,* 107 N. Y. 211 (13 N. E. 796, 1 Am. St. Rep. 807); *Anderson v. Steamship Co.,* 39 N. Y. Supp. 425; *The Max Morris,* 137 U. S. 1 (11 Sup. Ct. 29).

But it is a familiar principle that, where an injury results from the negligence of the master and a fellow servant, the master is responsible. Jaggard, Torts, 1051.

The principle so frequently announced by this court relative to what constitutes the relation of fellow servant will not include the ordinary seaman and the mate or captain, and we do not think the rule announced in *Chicago, etc., Ry. Co. v. Ross,* 112 U. S. 377 (5 Sup Ct. 184), will establish such relation between the captain and mate and the ordinary seaman. This view is also supported in *The Transfer No. 4* and *The Car Float No. 16,* 61 Fed. 364, in which the court, referring to the case of *Chicago, etc., Ry. Co. v. Ross, supra,* approvingly said:

" We are unable to distinguish such a conductor from the master of a ship, who, certainly while he is on deck and in command, directs its movements, regulates its speed, and controls the ship's company. If the conductor represents the owner, as a vice principal, most certainly the master does."

We have examined the instructions tendered by defendant and refused by the court, and find no error in the court's ruling thereon. There was no testimony offered tending to show contributory negligence by the plaintiff, and the plaintiff was exonerated from any assumed risk of unsafe towing appliances before the ship left Seattle, because of the promise not to use the mainsail.

The judgment of the superior court must therefore be affirmed.

GORDON, C. J., and FULLERTON, ANDERS and DUNBAR, JJ., concur.