## THE C. S. HOLMES.

(District Court, W. D. Washington, N. D.  February, 1914.)

### No. 2539.

1. COURTS (§ 365*)—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

Where there is a conflict between the maritime law and the local law, the decisions of the state courts are not binding on a court of admiralty.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 952, 955, 969–971; Dec. Dig. § 365.*]

2. SEAMEN (§ 29*)—INJURY IN SERVICE—LIABILITY OF VESSEL.

Neither a vessel nor the owner is chargeable with the negligence of the master or other officer in respect to the details of navigation through which a seaman is injured.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. § 29.*]

3. SEAMEN (§ 29*)—SUIT FOR INJURY—SUFFICIENCY OF LIBEL.

Allegations of a libel held insufficient to charge a vessel with liability on the ground that the master was in fault or negligent in the employment of a physician to treat an injured seaman.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. § 29.*]

In Admiralty. Suit by Gust Fondahn against the schooner C. S. Holmes. On exceptions to amended libel. Exceptions to first and second causes of action sustained.

For former opinion, see 209 Fed. 970.

Daniel Landon, of Seattle, Wash., for libelant.

Ballinger, Battle, Hurlbert & Shorts, of Seattle, Wash., for claimant.

NETERER, District Judge. This is an action in rem in which libelant seeks recovery of damages for personal injuries, damages for negligence in furnishing medical treatment, expenses of medical treatment, and wages. The matter was heretofore considered by the court upon exceptions to the libel, which were sustained, 209 Fed. 970. An amended libel has been filed, and the matter is now before the court on the claimant's exceptions to the amended libel.

The amended libel, after alleging the employment of libelant as a seaman on board the C. S. Holmes, recites:

"That while on the return voyage and while performing his duty as a seaman, on the 3d of January, 1913, in the afternoon a heavy storm arose, and the ship sought shelter in Neah Bay. A tug was sent out to look at the con-

dition of the weather, and came back and reported that it was not fit for any vessel to go out on account of the mountain of sea running at 12 o'clock noon. With the weather conditions unchanged the steamer Goliah gave the said C. S. Holmes a steel cable of five inches thickness, which was taken on board and made fast on the forward end of the said ship by being placed three times around a square bit; and by order of the captain of the said ship C. S. Holmes the steamer Goliah towed her to sea, it taking the steamer seven hours to tow the C. S. Holmes a distance of eight miles."

"That at about 7 o'clock, and while weather conditions were unchanged, the said steamer blew her whistle to let go the wire; the captain of the Holmes gave general orders for everybody to go forward and take hold of the wire; the crew held back; when they received the orders the second time everybody went forward, but none went to the wire except the libelant, the captain standing about four feet above the libelant, where he could see everything going on; libelant being in a position where he could not see the condition of the wire, libelant inquired of the captain how the wire was on the bow, and he was told by the captain that the wire was slack, and that everything was all right and to let go, and libelant let go the lashings and went away as quickly as possible to avoid danger. The wire was tight and sprang back and hit libelant, causing a compound fracture of libelant's right arm, paralyzing and bruising his side."

To the cause of action above alleged the claimant excepts as follows:

"Claimant excepts to all such allegations in said amended libel as are allegations of facts purporting to constitute such first purported cause of action, for the reason that such a cause is not an admiralty and maritime cause of action, and is not within the jurisdiction of this honorable court, and for the reason that said amended libel does not allege facts sufficient to constitute such cause of action."

By reference to the former opinion, it will be seen that the negligence upon which the libelant there relied was—

"that the captain, with the rest of the crew standing near by, negligently failed to insist upon giving libelant assistance."

The negligence here relied upon is that:

"Libelant inquired of the captain how the wire was on the bow, and he was told by the captain that the wire was slack, and that everything was all right and to let go, and libelant let go. * * * The wire was tight and sprang back and hit libelant."

The former ground of negligence was held insufficient to charge the owners or the vessel under the rule laid down by the Circuit Court of Appeals of the Ninth Circuit in Olson v. Oregon Coal & Nav. Co., 104 Fed. 574, 44 C. C. A. 51. The question now to be determined is whether the latter ground of negligence is sufficient to charge the vessel.

Libelant relies upon Keating v. Pacific Steam Whaling Co., 21 Wash. 415, 58 Pac. 224. The negligence there charged, however, was an unsafe appliance for towing, which might be sufficient to bring the case within the rule laid down in the Olson Case, supra. The defendant nevertheless contended that plaintiff might have been ordered to do the work in a safe manner, and the failure of the mate to order him to do it in such a manner was negligence of the mate in a detail of navigation, for which the owner would not be liable—citing Quinn v. New Jersey Lighterage Co. (C. C.) 23 Fed. 363; The Queen (D. C.) 40 Fed. 694. The court meets this contention with the general statement that the mate and captain are not fellow servants of an ordinary seaman, and cites Chicago, etc., Ry. Co. v. Ross, 112 U. S. 377, 5 Sup.

Ct. 184, 28 L. Ed. 787, and The Transfer No. 4 and The Car Float No. 16, 61 Fed. 364, 9 C. C. A. 521.

[1] Libelant contends that the holding of the state court should govern. Jurisdiction in admiralty cases being exclusively vested in the United States District Court by article 3, § 2, of the Constitution, and sections 24 and 256 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1091, 1160 [U. S. Comp. St. Supp. 1911, pp. 135, 233]), this contention cannot be sustained. It was expressly so held in Workman v. New York City, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314. In the absence of a holding of the Supreme Court of the United States, this court must be governed by the holdings of the Circuit Court of Appeals for the Ninth Circuit.

[2] Quinn v. New Jersey Lighterage Co., and The Queen, supra, were both considered and approved in the Olson Case. Each state that the rule in Chicago, etc., Railway Co. v. Ross does not operate to charge the owner with negligence of the master in respect to the details of navigation. Not only is this so, but The Transfer, etc., 61 Fed. 364, 9 C. C. A. 521, which the Washington Supreme Court cites in support of its holding, is based expressly upon Chicago, etc., Ry. Co. v. Ross, supra, which was overruled by the Supreme Court in the case of New England Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181. Referring to this case, Judge Ross, in the Olson Case, supra, 104 Fed., at page 576, 44 C. C. A., at page 53, says:

"In the recent case of Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181, where the case of Railroad Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787, was finally and squarely overruled, the Supreme Court announces the true rule to be, both upon principle and authority, 'That the employer is not liable for an injury to one employé occasioned by the negligence of another engaged in the same general undertaking; that it is not necessary that the servants should be engaged in the same operation or particular work; that it is enough to bring the case within the general rule of exemption if they are in the employment of the same master, engaged in the same common enterprise, both employed to perform duties tending to accomplish the same general purposes, or, in other words, if the services of each in his particular sphere or department are directed to the accomplishment of the same general end.'"

The negligence here complained of was in a mere detail in the navigation of the ship; it was not with respect to any duty which the owner personally owed to the libelant. For such negligence of any member of the crew, whether seaman or captain, the owner is not liable, and the vessel cannot be proceeded against in rem. Olson v. Oregon Coal & Nav. Co., 104 Fed. 574, 44 C. C. A. 51; The Queen (D. C.) 40 Fed. 694; Quinn v. Lighterage Co. (C. C.) 23 Fed. 363; The Governor Ames (D. C.) 55 Fed. 327; The Bunker Hill (D. C.) 198 Fed. 587; The City of Alexandria (D. C.) 17 Fed. 390; The C. S. Holmes (D. C.) 209 Fed. 970, filed December 31, 1913.

[3] The libel further alleges:

"That the captain gave orders to go back to Port Angeles; libelant requested to be taken to Port Townsend to the Marine Hospital, but was informed that it would cost $100 to do, and that there was a marine doctor at Port Angeles, and so refused; they arrived at Port Angeles at 3 o'clock in the morning; the libelant again requested to be taken to Port Townsend to the Marine Hospital, and the captain again refused; at about 7 or 8 o'clock

the captain took libelant to Dr. Taylor, wrote out a permit, gave it to the said doctor, informing him at the same time that it was good for all expenses incurred, the said doctor asked the captain to explain the permit, the captain then told him: 'I have nothing to explain; the man is in your care now, and he is out of my hands'—at the same time laughing at the doctor in a manner that would indicate that he had knowingly deceived him. The captain knew all the time that there was no marine doctor at Port Angeles; and that the permit was valueless for any purpose other than to be used for admission at the Port Townsend Marine Hospital. The captain deliberately put libelant off at Port Angeles for the purpose of getting rid of him, knowing and intending that he would at most only receive temporary relief; at the same time he knew, or should have known, that libelant needed prompt and permanent attention on account of the condition of his injuries."

"That the libelant was taken to the office of the doctor, and in the presence of the captain an attempt was made by the then unwilling doctor to fix him up temporarily, which was not successful, and two days later, while libelant was still in a helpless condition, the doctor requested the libelant to leave; libelant was unable to move; he received no attention or treatment for six days longer, when, with considerable of effort, he made his way to Port Townsend; during the time he was at Port Angeles blood poison set in, and after two months' treatment at the Marine Hospital at Port Townsend, an attempt was made to set the bones, but the ends of the bones so broken had commenced to decay by reason of treatment being neglected when injured, and the arm was in such condition that the plates used to hold the bones together broke loose, and the bones are still continuing to decay."

Claimant excepts to the above cause of action as follows:

"To all such allegations in said amended libel as are allegations of facts purporting to constitute such second purported cause of action, on the ground that such amended libel does not allege facts sufficient to constitute such a cause of action."

In the former opinion in this case it was held that the owner is liable for the negligence of a physician employed by the captain only where the master is negligent in employing him. The duty was there held analogous to that of selecting a competent fellow servant, where the master is held liable only when he knew, or should have known, of the incompetency of the fellow servant. 26 Cyc. 1295, 1298.

It was stated that the mere act of not going to Port Townsend to take libelant to the Marine Hospital would not be negligence. The question then remains whether in the employment of this particular physician there was such negligence as to charge the owner. It is nowhere alleged that the master knew of the physician's incompetence, nor are any facts alleged sufficient to charge him with knowledge. It is alleged that the master gave the physician a permit to the Marine Hospital, telling him that it was good for all expenses, when the captain knew that it was valueless for any other purpose than admission to the hospital. It is then alleged that "in the presence of the captain an attempt was made by the then *unwilling* doctor to fix him up temporarily." Only by the most liberal inference can the missing links between the representations of the master and the malpractice be supplied. It can be only by reading into the libel allegations that the *unwillingness* caused the malpractice, and that the unwillingness was caused by the falsity of the representations. The word "unwilling," as applied to the doctor, expresses a conclusion as to a state of mind, and no words or acts of the doctor are alleged which manifested to the master such a state of mind. It is evident that the physician ac-

cepted the employment and undertook to minister to libelant. Even had he done so gratuitously, there rested upon him "the same degree of care and skill and the same measure of duty" as would have rested upon him had he received compensation. 22 Am. & Eng. Enc. Law, 801. Here he had not only the liability of his patient, but that of the owners and the vessel as well, upon which to rely. The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760; The New York, 204 Fed. 764, 123 C. C. A. 214; The City of Alexandria (D. C.) 17 Fed. 390. A misrepresentation as to the method of payment, under such circumstances, cannot be reasonably anticipated to result in malpractice. It is not such negligence or fault as will charge the vessel. The other allegations are merely of conclusions, from which no implication of negligence is necessarily drawn, and are to be disregarded. Straus v. Foxworth, 231 U. S. 162, 34 Sup. Ct. 42, 58 L. Ed. ——; Jackson v. Chicago, Mil. & St. Paul Ry. (D. C.) 210 Fed. 495, filed in this court February 2, 1914.

The claimant admits that libelant is entitled to the $30 alleged to have been paid for medical treatment, provided he can prove he has paid such sum, and that he is entitled to wages to the end of his voyage if he can prove that he has not been paid the same.

The exceptions to the first and second causes of action are sustained.