## NATIONAL SHIPBUILDING CO. OF TEXAS v. MALLIA. (No. 8139.)

(Court of Civil Appeals of Texas. Galveston. May 9, 1922. Rehearing Denied May 25, 1922. Dissenting Opinion June 1, 1922.)

1. **Seamen** ⊂∞29(1)—**Statement of vessel owner's liability to seaman under admiralty rule.**

Vessel owners are liable for wages, maintenance, and expense of cure of seamen injured in service, except where injuries result from their own willful misconduct, and also for indemnity where injuries result from unseaworthiness of vessel or equipment.

2. **Seamen** ⊂∞29(5) — **To recover indemnity from vessel owner, seaman must show vessel's unseaworthiness.**

It is incumbent on a seaman, in order to recover indemnity for injuries, to show that his injuries resulted from the vessel's unseaworthiness.

3. **Seamen** ⊂∞29(2)—**Vessel manned by incompetent crew is unseaworthy.**

A vessel manned by an incompetent crew is unseaworthy as regards liability for personal injuries to seaman.

4. **Admiralty** ⊂∞2—**Notwithstanding common-law remedy is invoked, seaman's contract is regulated by maritime law.**

Notwithstanding a seaman injured in service sues at common law, the vessel owner's liability under his contract is regulated solely by the maritime law.

Graves, J., dissenting in part.

Appeal from District Court, Galveston County; J. C. Canty, Judge.

Action by Joe L. Mallia, a minor, by his next friend, John B. Mallia, against the National Shipbuilding Company of Texas. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

McDonald & Wayman and C. G. Dibrell, all of Galveston, for appellant.

Leo C. Brady and Aubrey Fuller, both of Galveston, for appellee.

LANE, J. This suit was filed by John B. Mallia, in behalf of his minor son, Joe L. Mallia, against the National Shipbuilding Company, hereinafter called the Shipbuilding Company, to recover for personal injuries suffered by said minor while employed aboard a vessel named Natina, the property of the Shipbuilding Company.

Plaintiff alleged that the vessel was in charge of one A. L. Dullahan, who was not qualified to discharge the duties he was undertaking to perform on account of the lack of experience in such matters; that the Natina had an incompetent crew; that the Natina was not provided with safe appliances; that the minor was inexperienced in the work he was employed to do, and had not been warned of the danger of such work. He also alleged, in substance, that the vessel was being pulled out into the river at Orange by a wire cable attached to a winch on a derrick across the river; that, when fastening the cable about a cleat on the rail of the vessel, and while acting under Dullahan's orders, his fingers were caught under the cable, and injured as a result of a negligent and unexpected order from the said Dullahan to the winchman to tighten up thereon.

The defendant answered by general demurrer and by special exception to that part of the plaintiff's petition whereby it was alleged "that the Natina was not provided with safe appliances necessary to be towed properly, and the cleat with which the cable or wire was fastened and about which the plaintiff was directed to wind or fix the cable or wire was not the proper place for said cable to be placed; and that defendant had not provided said hull with safe appliances with which to tow said hull; and that the failure of the defendant to do so proximately contributed to plaintiff's injury," because of uncertainty and indefiniteness.

The defendant also denied generally, and specially alleged:

That it was the owner of the boat Natina; "that on or about the 6th day of April, 1919, through plaintiff's father, the said John B. Mallia, whose business it was to furnish crews for vessels at the port of Galveston, it requested a crew to man the Natina, to tow her from Orange to Galveston; that plaintiff was furnished by his father as a member of the Natina's crew, and that the crew so furnished was competent and capable; that, while performing the usual and ordinary duties of a sailor aboard the Natina preparatory to the commencement of the voyage from Orange to Galveston, and while the said vessel was being pulled out into the river at Orange, the said Joe L. Mallia was injured by having or putting his hands under a cable which he was at the time handling; that his injuries grew out of the handling and operation of said vessel, in all respects seaworthy, for which no cause of action for damages could be maintained; also that plaintiff's injuries were proximately caused through his own contributory negligence by having or putting his hands under the cable after the order was given to tighten the cable."

The case was submitted to a jury upon special issues, in answer to which they found that Joe Mallia was injured in the manner as alleged by him; that at the time he was injured he was 17 years of age; that the defendant was guilty of negligence in employing him to perform the services required of him; that such negligence was the proximate cause of his injuries; that the crew of the hull Natina was not a competent and capable crew to man said vessel; that the defendant was guilty of negligence in failing to provide a competent and capable crew to man said vessel, and that such negligence was the proximate cause of the injury; that the vessel was not equipped with necessary and safe appliances for the proper handling of the same; that the failure to furnish such appliances was negligence, and that such negligence was the proximate cause of the injury complained of; that at the time of his injury Joe Mallia was acting under orders from the proper officer in charge of said vessel; that Captain Dullahan did hallo to the man operating the winch on the derrick barge to tighten up on the cable extending from the derrick barge to the Natina, and that such order of Dullahan was the proximate cause of the injury complained of; that Captain Dullahan, in the exercise of proper care, should have known that Joe Mallia had his hands under the cable after he ordered the man on the barge to tighten up on the cable; that the amount of damages to which Joe Mallia was entitled was $5,000. Upon these findings of the jury judgment was rendered for plaintiff for the sum of $5,000. From the judgment so entered, the Shipbuilding Company has appealed.

Appellant's first contention is:

"(a) A person engaged in a maritime employment cannot recover in a common-law action, according to the full indemnity rule of the common law, for personal injuries received in the performance of his duties, through the negligent and improvident order of his superior officer, but the measure of his recovery is that of the maritime law, viz. wages, maintenance, and cure. And, since the undisputed evidence shows that plaintiff, while engaged as a seaman, was injured solely because of the negligent order of a superior officer, a verdict should have been directed for defendant, the action being for common-law damages.

"(b) While a cause of action sanctioned by the maritime law may be enforced through a common-law remedy, the well-recognized rule concerning the measure of recovery must be applied, and not the full indemnity rule of the common law."

[1] We sustain section (b) of the foregoing contention, and hold that the measure of damages for personal injuries received by one employed on a vessel, while in the performance of his duties as such employee, by reason of the negligent and improvident order of his superior officer, and not by reason of the unseaworthiness of the vessel, if any, is that of the maritime law—that is, for wages, maintenance, and cure—and that, while a cause of action sanctioned by the maritime law may be enforced through a common-law remedy, the injured party cannot recover in a common-law action, according to the full indemnity rule of the common law.

In the case of The New York, 204 Fed. 764, 123 C. C. A. 214, it was said:

"It is the law of the sea that vessel owners are liable for wages, maintenance, and expenses of cure of a seaman injured in the service of the ship, except as a result of his own willful misconduct. There has been gradually added to this well-defined relation, either by statute or by judicial decisions, an obligation of the owners to give the seaman indemnity for injuries resulting from unseaworthiness of the vessel or her equipment. The final utterance of the Supreme Court on the relation of seamen and owners is the case of The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760 (1902). It is inconsistent with many prior and some subsequent decisions."

[2] It will be noted that in the above quotation it is, in substance, held that, to entitle one who is injured while engaged as a seaman on a vessel to recover indemnity for his injuries, it is incumbent on him to show that his injuries were the result of the unseaworthiness of the vessel. This being the rule as to the measure of damages, the important inquiry in the present case is: Did the injury of Joe Mallia result from the unseaworthiness of the Natina?

[3] The jury found, upon evidence which we think sufficient to support such finding, that the crew of the vessel Natina was an incompetent one, and we are not at liberty to interfere with such finding. It is well-settled law that a vessel manned by an incompetent crew is an unseaworthy vessel. The findings of the jury, therefore, that the crew of the Natina was incompetent settles that question against the contention of appellant that she was a seaworthy vessel. The jury went further, however, and found that such unseaworthiness of the vessel was the proximate cause of the injury of Joe Mallia. After a careful review of all the evidence we have reached the conclusion that there is no evidence to support this latter finding, and that the contention of appellee that the unseaworthiness of the Natina was the proximate cause of the injury is not sustained.

The jury in general terms, without specifying any particular improper appliance or appliances, also found that the vessel was not equipped with proper appliances, and that the failure to so equip the vessel was the proximate cause of the injury to Joe Mallia.

We have reached the conclusion that there is no evidence to support either of these findings—that is, that the vessel was not equipped with proper appliances, or that the want of proper appliances was the proximate cause of the injury complained of—nor was there any evidence which would support a finding of the trial court that there was any causal connection between the unseaworthiness of the vessel and Mallia's injury. The undisputed evidence shows that the injury complained of was due to the order given by Captain Dullahan to the winchman on the barge to which the cable was attached to tighten the cable at a time Joe Mallia had his fingers under the same, and that such order was the direct and sole approximate cause of the injury to Mallia, unless it can be said that the negligence of Mallia in putting or leaving his fingers under the cable after hearing the order of Dullahan to tighten the same was a contributing cause.

[4] Since this is a cause of action arising under the maritime law, it must be governed by that law in fixing liability. What is the liability in the present case? At the time of his injury Joe Mallia was engaged in performance of his duties on the vessel Natina under a maritime contract. The scope, effect, and liabilities arising under such contracts are defined and regulated solely by the general maritime law, which is a different system of jurisprudence from the common law, and is not subordinate to nor controlled thereby. Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900. While it is true that the plaintiff has chosen common-law remedy, such choice neither changes the maritime rights of the parties, nor creates a new right in either. Chelentis v. Luckenbach, etc., Co., 247 U. S. 372, 38 Sup. Ct. 501, 62 L. Ed. 1171. In the case last cited it is said:

"A seaman may not recover in a common-law action according to the full indemnity rule of the common law for personal injuries received in the performance of his duties at sea, through the negligent and improvident order of his superior officer, but the measure of his recovery is that of the maritime law, viz. wages, maintenance, and cure, notwithstanding the provisions of the Act of September 24, 1789 (1 Stat. 76, c. 20) § 9 (Judicial Code, §§ 24, 256), giving the federal District Courts exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it,

and of the Seamen's Act of March 4, 1915 (38 Stat. 1185, c. 153) § 20 (Comp. St. 1916, § 8337a), that in any suit to recover damages for any injury sustained on board vessel or in its service seamen having command shall not be held to be fellow servants with those under their authority. * * * Has Congress changed the situation by section 20 of the Seamen's Act (38 Stat. 1164, 1185), c. 153 (Comp. St. 1916, §§ 8306, 8337a), as the plaintiff contends? He argues that the act makes the master a fellow servant of the seaman, and therefore that Congress intended to make the relation between the seaman and all the officers throughout the same as at common law. But the Supreme Court, in the case of The Osceola, * * * while reserving the question whether the master and seaman were fellow servants, held that it made no difference whatever in respect to the liability of the shipowners for an improvident order of the master which resulted in personal injuries to the seaman. * * * It follows that whether the master and seaman are fellow servants or not is quite immaterial in the case of a suit for injuries resulting from an improvident order of the master. For this reason the court was right in directing a verdict for the defendant and the judgment is affirmed."

Following, then, the rule established by the cases cited and quoted from, we are constrained to hold that the measure of damages in the present case is for wages, maintenance, and cure, and that the court should have confined the jury to that measure of damages alone.

The court submitted to the jury the following questions:

"Was the plaintiff injured in the manner as alleged by him?"

"Was the defendant guilty of negligence in failing to equip said hull Natina with necessary and safe appliances for the proper handling of said vessel?"

Appellant assigns these questions as error for the following reasons:

"(1) Because there was no evidence showing that appellee's injuries were caused from the want of necessary and safe appliances.

"(2) Because the jury could not tell what was meant by said questions as they do not specify any particular appliance, and because neither the pleadings nor the evidence showed that appliances such questions had reference to, or what was or what was not a necessary and safe appliance. Such questions were misleading and confusing and permitted the jury to go outside of the record and the pleadings to determine whether the appliances were necessary and safe, and did not disclose upon what fact or facts an answer to the questions could have been based, and because the evidence showed conclusively that appellee was injured either by reason of the negligent order of Dullahan to tighten on the cable, or from his own contributory negligence in having or putting his hands under the cable after the order was given by Dullahan to tighten thereon."

We think the objections urged to these questions should be sustained; but, if we are correct in our holding upon the questions already discussed, the errors in submitting such questions become immaterial, and therefore it is unnecessary to discuss them further, in that, under the undisputed facts, appellee could recover for his injuries wages, maintenance, and cure only, regardless of whether appellee was or was not guilty of negligence which caused his injury, it being shown that the unseaworthiness of the vessel did not contribute to such injury.

What has been already said disposes of the contention made by the fourth, fifth, sixth, and seventh propositions of appellant, and therefore we deem it unnecessary to discuss them further.

By appellant's proposition No. 8 it is contended that, in view of the fact that the trial court tried this cause as at common law, and allowed the jury to find compensatory damages, said trial court erred in not submitting the question of contributory negligence on the part of Joe Mallia upon proper request therefor. We agree with the contention thus made, but, as has been shown under a discussion of other assignments, it is the law of the sea that vessel owners are liable for wages, maintenance, and cure of a seaman injured in the service of the ship, regardless of whether there was negligence on the part of the shipowner or contributory negligence on the part of the injured party; therefore, in such cases as the present one, a charge upon contributory negligence would be improper.

The disposition we have made of the assignments already discussed renders it unnecessary to discuss the remaining assignments, and we refrain from so doing.

Having reached the conclusion that compensatory damages are not recoverable in the present case, we reverse the judgment of the trial court, and remand the cause, so that the appellee, upon proper pleadings, may recover what he may show himself entitled to under the maritime rule which allows him wages, maintenance, and cure.

Reversed and remanded.

GRAVES, J., concurs in reversal of the judgment, but dissents from some of the conclusions reached by the majority, and will file his conclusions.

GRAVES, J. (dissenting). The majority opinion on original hearing, through no fault of its author, does not accurately reflect my individual view in this cause. I agree to a reversal, but not to the one entered restricting the appellee upon another trial to such recovery only as he "may show himself entitled to under the maritime rule, which allows him wages, maintenance, and cure." In my opinion the case as made by the pleadings and evidence required no such restriction, but rather presented one calling for the application of the full indemnity liability per-

mitted by the common law. Accordingly, since the evidence seems to me to have raised that issue, I agree with appellant and with the majority opinion that the trial court erred in not submitting the question of contributory negligence on the part of Joe Mallia to the jury.

There was further error, under the pleadings, I think, in permitting the appellee to recover for diminished capacity to. labor and earn money during his minority; he was 17 years old at the time of his injury; there was no proof of his having been emancipated by his father; hence his earnings until majority belonged to the father, and the latter's having brought the suit for the boy as next friend made no difference. Ry. Co. v. Morin, 66 Tex. 225, 18 S. W. 503; Ry. Co. v. Boozer, 70 Tex. 530, 8 S. W. 119, 8 Am. St. Rep. 615.

For these two errors there ought to be a retrial, and the appellee's pleadings in the matter averring the furnishing, using, and effect of improper and unsafe appliances on and an incompetent crew in charge of the boat, as well as the court's charge submitting issues thereunder, should be made more specific and definite, but, as already suggested, the cause of action ought by no means, in my judgment, to be cut down to the narrow limits applicable, under the maritime rule appealed to by the majority, to accidents upon strictly seaworthy vessels.

As I understand the cases cited in the majority opinion, the decisions all presuppose seaworthiness, and none of them affirm that compensatory damages may not be recovered for injuries resulting from unseaworthiness of the ship, or from the failure to provide and keep in order thereon the proper equipments and appliances; indeed, by implication at least, they hold the contrary. The question turns then upon their applicability here; if they have none, it becomes a mere preachment to elucidate the principle they involve.

Two distinct conditions open the situation here presented to common-law liability: (a) The vessel was unseaworthy in that it carried an incompetent crew; (b) it was equipped with an improper appliance for the purpose it was used for; that is, the little cleat on the rail was inadequate as an anchorage for or means of utilizing the cable towing the entire ship, and was never intended for that service, being merely a fastening for a guy rope. The jury found that both of these conditions existed, and that each was a proximate cause of Mallia's injury, but this court, without discussing the evidence pro or con, and empirically, it seems to me, strikes down the effect of these findings by determining from a clear sky that, except as to unseaworthiness in consequence of an incompetent crew, there was no evidence to support them. With much respect, that conclusion is emphatically challenged as being unjustified.

The opposing suggestion is ventured that an inquiry into the evidence will disclose that the jury's findings in each of the particulars thus summarily disposed of found ample support in the testimony, just as that relating to seaworthiness and incompetency did.

In the first place, the determination that the crew as a whole were incompetent of course included Dullahan, who gave the fatal command, the testimony tending to show that the entire force were unequal to the duties of seamen or sailors, but were, as witness McGee put it, "about as green a bunch of men as I ever seen on a job"; Dullahan's own statement indicating that he himself had never been a seaman, but rather a sort of roustabout foreman. Into this company the appellee, a raw boy of 17, was called from where he was cutting wood for the boilers—a mere fireman's job—to perform the services of an able seaman on the deck of the ship—that is, to assist in handling the towing cable, an employment in which he was wholly inexperienced, and for which he was incompetent, under these circumstances:

"I don't know exactly how far Mr. Dullahan was from where I was standing at the time he gave this order; I guess he was about 25 feet away from me, and he was directing the work. There was some one else working with me at the time, a boy by the name of George Van Benthuysen. Prior to the time that I did this fastening of the cable around the cleat I had never done any work of that kind. Mr. Dullahan did not tell me anything about the danger of doing any work of that kind, and he did not warn me of any danger connected with that character of work at all; he did not tell me anything before I did that work how to do it at all, and there were no instructions given me by any one in charge of the ship about the nature or character of the duties that I was to perform. There were no instructions given, that I know of, or any warning given me about the nature or the danger of the work I was called upon to do with reference to the fastening of this cable around this cleat."

By the undisputed proof the small cleat on the rail, to which he was thus directed to fasten it, was neither the place nor the proper appliance for the cable to go on at all; Edward Neill, presumably the oldest employee on the boat, testified:

"After we left the dock they passed a wire from a derrick barge aboard, and tied it in through the pipe; there was no plate, no fastening on the pipe, just ordinary woodwork, they had no bits on the deck; they took it in through the pipe and brought it up onto the rail and put it on to a small cleat, which was there only for no other purpose than a boom guy. * * * The wire had no business there at all, just on a little six-inch cleat. The pipe in the first place should have been faced with iron; that ought to have been an iron pipe inside of wood, so that nothing would cut it, a wire or anything else, or sink into the woodwork; and that cleat, the rope had no business there at all. If there had been any great

weight on it, it would pull the cleat off. It is not put there for that purpose. It is just merely put there for a boom guy. I have been going to sea since November, 1878. From my experience as a man who understands ships and who has been going to sea for 43 years that was not a proper way and not the proper appliance for a ship to be manned out with to be towed. That boy had no business being on that cleat whatever. * * * He did not get injured because of the boat drifting, but because it was jammed down in the woodwork which he could not get it out."

As to the actual happening of the accident, appellee and the witness McGee gave substantially the same version, the former's being:

"Mr. Dullahan told me to do that; he was the man that employed me and had charge of the boat. I was standing there. This fall from a derrick barge was through a hole in the ship in some bits there, and was cutting there, and he told me to take it out of there and put it over on a rail on a cleat which holds the booms in place, and I done that, and had a shackle on the end of the wire fall or cable whatever they call it, and I put it over the end, and he said, 'I don't think that will hold; you better take a turn around on that,' so I took a turn around on that on the cleat. So I took it underneath there, and as I was getting it underneath there I got my hands caught, and he hallooed to heave away, and before I could get my hands away my fingers were off; they pulled my fingers off. Mr. Dullahan gave the order to the man on the derrick barge to heave away at the time I was fastening this cable or hawser around the cleat"

—while McGee put it this way:

"We went up on the boat and Mr. Dullahan told us what to do and me and the young fellow was prizing this wire cable out. It was buried in about an inch deep over in the bit and I put it over like he said put it and he told us to prize it out and he told Joe Mallia to come down and put it over the other one, and when he put it he told the barge man to pull it ahead and he jerked it right quick like that, and I said, 'You played hell; you cut a man's fingers off,' and they were laying there. * * * I don't suppose Mr. Mallia had time to get his hand out or he would have been apt to get it out—it happened that quick (witness illustrates space of time on quickness by a snap of his fingers)."

Now, in the face of the situation thus protruding, if Dullahan was incompetent to do the work he was undertaking to do, if his deficiency, along with that of the rest of the crew, rendered the ship unseaworthy, and if, in the exercise of his lack of skill, his individual and bungling order led directly to the accident, how can it still be soundly said that the injury did not result from the unseaworthiness so occasioned? Likewise, as to the effect of the use of the little cleat on the rail, instead of the regular bits encased in a metal-lined chuckhole on the deck; what they were trying to do was to tow or pull by metal cable the entire ship out into the channel, and that the injury also followed as a direct consequence of the hazardous use for that purpose of so inadequate and improper an appliance as a small, 6-inch boom-guy hook, located upon the rail, seems to me well-nigh self-evident, without the testimony to that effect just quoted from.

In a word, had Dullahan been competent, he would neither have called the inexperienced boy from cutting wood for the boilers to attempt an able seaman's service on the deck, nor have commanded him to move the metal cable from the bits and wrap it round a mere cleat upon the rail, without even a warning of the hazard of doing it, nor yet have given the negligent order to the winchman to tighten up without taking any heed as to the appellee's position at the time; had not the appliance so utilized been too small, unsuited for the purpose, and improperly situated, the appellee's hands would not have been so caught; in either event, there would have been no such case as this at bar.

The view expressed seems to me to be fully sustained by the following authorities: Storgard v. France & Canada S. S. Corporation (C. C. A.) 263 Fed. 545; The Colusa, 248 Fed. 21, 160 C. C. A. 161; Corrado v. Pedersen (D. C.) 249 Fed. 165; Keating v. Pacific Steam-Whaling Co., 21 Wash. 415, 58 Pac. 224.

I think the cause should have been remanded for another trial not inconsistent with the the conclusions herein given; against the judgment as rendered by this court, this dissent is earnestly entered.